# J. RICHARD BARRETT V. ROBERT T. BARRETT'S ADM'R.

An administrator may sue to recover the land of his intestate, for the law so requires; but, *non constat*, that the administrator, who has never had possession of land, may be sued as a mere fiduciary. (Paschal's Dig., Art. 1324, Note 500.)

If the administrator be in possession he may be sued as a trespasser.

By the 112th section of the administration law all the estate of the intestate vests immediately in his heirs, and the control of the administrator is only over the property, which is subject to the payment of debts, and it can only be exercised under the orders of the court. (Paschal's Dig., Art. 1373, Note 517.)

Where the plaintiff declared against an administrator as such, averring that he (the plaintiff) was entitled to a tract of land, and the administrator answered that the plaintiff's deed had never been recorded, and that credit had been given to the intestate on the faith of the same land, and the heirs were not made parties, the issues made were wholly immaterial, and the verdict determined nothing.

It is impossible to adjudicate upon the title of land held by an intestate without making the heirs upon whom the descent was cast parties.

It was error to charge that if the deed of the intestate had not been duly registered it conveyed no title to the grantee which could defeat the right of subsequent creditors without notice. (Paschal's Dig., Arts. 997, 3875, 3876, 3877.)

It is not necessary to the validity of a deed that it should be registered. The title passes by the execution of the deed, and it cannot be defeated except for fraud. The record of the deed rebuts the presumption of fraud, and if the deed be voluntary it is void as to subsequent creditors, but if made for a valuable consideration and the purchaser has acted in good faith, no moral principle can be invoked for interference with the title of the purchaser.

The true rule is, that the legal inference and presumption of fraud in favor of creditors at large, who have acquired no lien, are swept away, and such creditor is compelled to establish the fraud, if any exist, by actual proof.

The creditor cannot object to the sale of property by the debtor before his lien has attached to it.

Upon the death of an intestate the legal title to his land vests directly in his heirs, subject only to the equitable control of the personal representative for the purposes of administration.

ERROR from McLennan. The case was tried before Hon. M. A. LONG, a special judge, agreed upon by the parties.

The facts as to the petition are sufficiently indicated in the opinion of the court. The defense set up in the answer attacked a deed made by the defendant's intestate, and set up an equity in favor of·his subsequent creditors. The jury found that the land was subject to the debts of the intestate, and the judgment rendered was, that the plaintiff recover all the land not necessary to pay such debts. As the case was decided upon the legal proposition that the heirs were necessary parties, a further statement of the facts is deemed unnecessary.

No briefs have been furnished to the *Reporter.*

LINDSAY, J.—This is a somewhat novel case. Its novelty arises from the very peculiar and unique character of our administration laws. It is a suit brought by the demandant, in the manner of an action to try title, as prescribed by our laws, against an administrator, who claims the land sought to be recovered as a part of the real assets of the estate of his intestate. We have sought in vain for a precedent in our own reported decisions, and we feel well assured that it would be difficult to find one in the decisions of any other state for a proceeding just like the present. There can be no doubt that an administrator, or an executor, may (and he is bound to do so by the law) bring suit for lands, really the property of the estate, which are in the adverse possession of others. This is because it is *positivi juris,* so enjoined by legislative enactment, and, under our system, is indispensable for the full discharge of the administration. But it may be well questioned whether this action to try title, which has been likened by this court to the possessory action of ejectment at common law, can be brought against an administrator or an executor as a mere *fiduciary.*

The statute, called the statute of "trespass to try title," certainly does not contemplate such an action against a

mere *fiduciary*, holding constructive possession of land, but only against the tenant in actual possession.   Against such a one, a demandant must recover upon the strength of his own title, and this he may do, whether that title be legal or equitable, under our system.   But, in enforcing his right by trial, the principles of law or of equity would be invoked according to the nature of that title.   The administrator's possession of the lands of his intestate, is, in contemplation of law, only a constructive possession.   He holds them only for a purpose; and that is, the payment of the debts of the decedent.   He is not presumed to have *pedis possessio*, actual occupancy of the land.   If he does so occupy, he, as well as another, is suable in an action of " trespass to try title," not as administrator, but personally, as a violator of the rights of the true owner, against whose will or consent he may hold that possession.   An administrator has no right to put another in the possession of any lands of his intestate. No sale, no lease, nor renting of the lands of the intestate can be made by the administrator, except under a judicial order, sentence, or decree of the probate court.   Consequently, without such order, sentence, or decree, he has no right to put any one in the possession of the lands placed by our administration laws under his equitable control for the sole purpose of paying the debts of the decedent. By a provision in those laws, (Paschal's Dig., Art. 1373,) " all the estate" of the intestate " vests immediately in his heirs at law," " except such as may be exempted by law from the payment of debts."   Hence the necessity, as required by the statute, of the administrator's making application to the probate court for a judical sentence or decree, in order to the divestiture of the legal title cast upon the heirs at law by the statute of descents.

From this view of the law, it is obvious, under the common-law system of pleading, the plaintiff below, by the general demurrer pleaded by the defendant, would have been turned out of court, and would have been compelled

to bring his suit *de novo*. It is, however, not the case here. He showed by his petition, if the facts stated were true, that he was entitled to relief of some kind. But it was impossible, however, that that relief could be obtained upon the issue formed by the pleadings. It was an immaterial issue, and the finding of the jury and the judgment of the court upon it could settle nothing the one way or the other. The jury brought in a verdict that the lands were subject to the payment of the debts of the decedent. And the judgment of the court upon the verdict was that and nothing more. It settled no right of property between the parties. It was no judicial determination upon the title for which this action of "trespass to try title" was expressly given. The answer of the defendant does not state facts which are responsive to the legal propositions involved in the allegations of the petition. It is what is called a negative pregnant in the common-law system of pleading, but what, under our system, we may justly denominate a wholly immaterial response to the allegations of the petition. Yet a trial, verdict, and judgment were had upon this state of pleading, which settles nothing in regard to the title of the property in controversy. It was impossible for the court to adjudicate upon the title without making the heirs at law of the intestate, upon whom the descent had been cast, and in whom the title was, if the title of their ancestor was a valid one, parties. They were necessary parties, and ought to have been made so before any adjudication was made upon the title. We therefore must reverse the judgment of the court below, and remand the cause.

And as a re-examination of the cause of action has to take place in that court, it becomes necessary that we should review the charge of the court given, as well as the instruction asked by the plaintiff and refused, to guard against errors of law upon another trial. We cannot admit the principle of law announced by the court in the charge to

the jury.    It is as follows: "If they find from the evidence that the deed under which the plaintiff claims the land in controversy was not recorded in the counties where the lands lie until after the debts were contracted by the intestate, which have been proved in the cause, that in that case the deed of conveyance from Robert T. Barrett to Richard Barrett conveys no title as against such creditors, and there should be a verdict for the administrator of the intestate, to the end that he may pay such debts out of the land, unless such creditors had notice of the same."    We cannot concede that this proposition is a true interpretation of our statutes on conveyances.    The statutes on conveyances, irrespective of those involving the interests of *femes covert,* will be found in articles 977, 3875, 3876, and 3877 of Paschal's Digest.    The deed of Robert T. Barrett to J. Richard Barrett was signed, sealed, and delivered on the 12th day of October, 1859, as established by the oaths of the two attesting witnesses.    The execution and delivery of the deed took place in the state of Missouri, and it was filed for record in McLennan county,. State of Texas, on the 7th day of June, 1867, and in Hill county on the 5th of November, 1867, counties in which a great part, if not all, of the lands lie, and was there recorded.    Now, the position assumed in the charge of the court, that no legal title can pass by an unregistered deed as against subsequent creditors, is neither sustained by any adjudication of our court, by the construction given to the statute of 13 Elizabeth, from which the provision in our law as to creditors was borrowed, nor is it borne out by our statutes themselves.    It is not necessary to the validity of a deed for lands that it should be registered.

The legal title passes by the simple signing and delivery of the deed as the law now stands.    But for the protection of subsequent purchasers and creditors the policy of the country has required the registration of deeds, not for the purpose of giving greater validity to the legal title, but to

guard against frauds in the alienation of real property. It is against the genius and spirit of American institutions to impose restrictions upon the free alienation of property, and the policy of providing for protection against frauds has only been extended so far as an enlightened sense of social justice seemed to dictate. This protection is extended to two classes of persons only, subsequent purchasers without notice and creditors. The registration laws were enacted for their benefit. They are not necessary to create a legal title in the purchaser of land. His legal title is as absolute and complete without as with their observance. But what class of creditors was intended to be protected by this legislation? Was it the creditors who became such subsequent to the delivery of the deed, as well as those who were so prior to and at the time of its delivery? The deed certainly could not operate as a fraud upon those who had not yet become the creditors of the vendor. Nor do the statutes anywhere say anything about subsequent creditors, as they do about subsequent purchasers. It is preposterous to suppose that they were even in the minds of the law-makers at the time of the passage of the acts. Existing creditors were intended to be protected by the statute (13 Elizabeth) as well as by our statutes of registration. Even voluntary conveyances, made *bona fide,* are upheld against all subsequent creditors. *A fortiori* should conveyances for a valuable consideration be sustained. The effect of the acts of registration is to create the inference of fraud, or raise the presumption of law that a conveyance is fraudulent, and therefore void as to existing creditors, if it be not duly registered. If it be duly registered, this presumption of law is rebutted, and then it becomes a question not of constructive, but of actual fraud, which must be established by proof, as all other cases of fraud are required to be established. In such a case indebtedness to insolvency would be a strong badge of fraud. And where the conveyance is voluntary, under

such circumstances it is absolutely void as to creditors. But if it be made for a valuable consideration, and the purchaser has acted in good faith, no moral principle can be invoked for interference with the honestly-acquired title of such purchaser. What advantage or preference in morals has the creditor over the purchaser? Both have acted upon their confidence in the vendor of the title; the one in extending to him credit, the other in trusting to his integrity that he will do no act on his part to prejudice the rights acquired under the deed.

Thus far it is a matter of confidence in creditor and purchaser. Their rights seem equipoised. In the scale of justice they are *in equilibrio*. Equity ought not to interpose, but leave them where the law places them. The policy of the law favors the security of titles as conducive to the public good, so says Judge STORY; and that policy "would be subverted if a creditor having no lien upon the property" should yet be permitted to avail himself of the mere equal trust which he reposed in the vendor, in giving him the credit, to defeat such a *bona fide* purchaser. From overweening confidence, it may be, in the debtor, the creditor has extended him credit, liabilities have thus been incurred, and all is done in good faith between the parties, and an obligation is thus contracted by the debtor to fulfill his contract with his creditor. By the same overweening confidence of the purchaser in his vendor, having acquired title to his land by deed, and believing confidently by no act of his vendor will his property be imperilled, or it may be from accident, or sheer mistake, or by some physical impossibility to do so before the credit is given, he has failed to register his conveyance: can it be insisted, upon any principle of morals, by any inflexible rule of law, that such circumstances will operate as constructive fraud, to be set up and relied upon by such subsequent creditor? No; the true rule of law must be in such a case that the legal inference and presumption of fraud in favor of creditors, as con-

templated by the statute, are swept away, and such creditor would be compelled to establish the fraud, if fraud exists, by actual proof. The presumption of fraud in such a case would not be indulged in favor of the creditor. He could not be entitled to more favor *in foro conscientiæ* than the purchaser for a valuable consideration, who would be as much a general creditor of his vendor for the money advanced in payment for the land as the special creditor who reposed such trust in extending his subsequent credit. It is conceded, that if the subsequent creditor had obtained any character of lien upon the property before notice of the unrecorded deed or of its registration, then he would have placed himself within the protection of the statute; but, failing to do so, he was as neglectful of the security of his interest as was the purchaser in not having his deed recorded, and, therefore, has no better or higher claims upon the consideration of a court of equity, a rule of which court is, where parties are equally meritorious and equally innocent, he who is first in time is better in right.

The view which we have here taken of our statutes upon conveyances and registration is sustained by the case of Ayres v. Duprey, (27 Tex., 607,) in which the learned judge says: "The creditor cannot object to the sale of the property by the debtor before his lien has attached to it. Such sale, if the title is registered, is conclusive upon the creditor. Why shall he complain, if the same effect is given to notice to him of the preceding sale before he has secured a lien upon the property?" This comment, in our view, is sound and just, as well as the comments in the whole concluding paragraph of that opinion, and we cheerfully adopt them as a correct exposition of principle and a safe authority on which to rely in the determination of such questions.

In regard to the instruction asked and refused by the court, the proposition contained in it, that the deed from the intestate to the plaintiff passed the legal title to the

land, is certainly a clear principle, if the legal title was in the intestate at the time of its execution and delivery. But it certainly contained a false assumption, in deriving title from the intestate to vest in the administrator. The legal title vested directly in the heirs at law, subject only to the equitable control of the personal representative for the purposes of administration.

As the plaintiff shows he was entitled to relief, the judgment is reversed and the case remanded, with instructions to give leave to the plaintiff to amend his petition and make parties of the heirs at law of the intestate.

Reversed and remanded.

Morrill, C. J., dissenting.—As the case is stated in the opinion of the majority of the court it is unnecessary for me to do anything more than to show in what I dissent. I look upon the whole case as depending upon the definition of the word "creditor." The statute, divested of all the verbiage not bearing upon the question before the court, being article 4988, Paschal's Digest, provides: "All bargains, sales, and other conveyances whatever, of any lands, tenements, and hereditaments, whether they may be made for passing any estate of freehold or inheritance, or for a term of years, and deeds of settlement upon marriage, whether land, slaves, money, or other personal thing, shall be settled or covenanted to be left or paid at the death of the party or otherwise, and all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and lodged with the clerk, to be recorded according to the directions of this act; but the same, as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof, or without valuable consideration, shall nevertheless be valid and binding."

It is admitted that the conveyance of land by the intestate to plaintiff was not lodged with the clerk for record previous to the time the debts were contracted. It is also admitted that there are divers and sundry claims against the estate of the intestate, and that these claims have been allowed by the administrator of the estate and approved by the chief justice of the county. If, therefore, those whose claims have been thus allowed and approved are such creditors as are contemplated by the act, then the statute declares the conveyance void as to those creditors.

The term "creditors" has a common and a legal meaning. In the common idea, a creditor is one to whom a sum of money or anything is due. But inasmuch as a creditor cannot have his debts collected till they have been adjudicated by a proper and legal court, it is probable that the statute contemplated such creditors only as had their debts merged in judgments of courts or became judgment creditors. There can be no doubt that a judgment creditor is one of the highest character. Without deciding that the creditor mentioned in the statute is the judgment creditor only, inasmuch as a judgment creditor is a creditor in every possible sense of the word, it is evident that the statute must include such in the term creditor.

But are persons whose claims have been allowed by the administrator and approved by the chief justice such judgment creditors?

Our statutes provide two methods for a creditor to establish his claim judicially against an estate of a deceased party. The first, by the presentation of the claim to the administrator of an estate, accompanied with an affidavit in writing that the claim is just, and that all legal offsets, payments, and credits, known to affiant, have been allowed, and having or receiving the certificate of the administrator indorsed upon or annexed to the claim, stating the time of the presentation and the allowance thereof,

354        Barrett *v.* Barrett.        [S. C., Austin,

together with a like certificate of the chief justice of the county of his approval of the claim.

The second method is a judgment in the district court. (Paschal's Dig., Arts. 1309, 1311.) But the statute expressly provides that the judgment thus obtained shall have the same force and effect as if the amount thereof had been allowed by the executor or administrator and approved by the chief justice. (Art. 1311.) It would seem, therefore, that the statute places a claim acknowledged by an administrator and approved by a chief justice upon a par with one established in any court of the state.

It may be said that a judgment in the district court creates a lien upon all the real estate of the debtor situated in the county.

The lien established for the payment of a claim against an estate is not confined to the real estate situated in the county in which the claim is established, but extends to all the property of the estate of the deceased wherever situated.

The legislature has declared what shall be the requisitions of a title, and has required that titles to real estate, to be valid in all respects, shall be recorded. By the ancient laws, both of England and Spain, possession, actual possession, was given to the purchaser of real as well as personal property by calling upon the citizens of the vicinage to witness the transaction; that the purchaser did enter upon the land and do and perform such things as an owner only was permitted to do and perform. This delivery and actual possession has been substituted by requiring the purchaser to place his title upon the records accessible to all, each and every person, and is imperative. It is designed that every one who has an interest in the property or pecuniary affairs of another should have notice thereof, and therefore provides that recording a deed is not necessary, so far as relates to all creditors and subsequent purchasers with notice.

The controversy in this case is between the judgment

creditors, or at least *quasi* judgment creditors, and one who did not record his deed agreeably to the requirements of the statute.

The charge of the judge had no reference to creditors in general, and could have none, because none such were before the court.   The charge is strictly statutory; or, if there was any error, it was in favor of the party complaining; "if the jury find from the evidence that the deed under which the plaintiff claims the land in controversy was not recorded in the counties where the lands lie until after the debts were contracted by the intestate which have been proved in this case, that in that case the deed of conveyance from Robert T. Barrett to Richard Barrett conveys no title as against such creditors, and there should be a verdict for the administrator of the intestate, to the end that he may pay such debts out of the land, unless such creditors had notice of the same."

This charge left to the jury the facts in the case, and gave as law what the act required.   I have thus far proceeded as if judgment creditors only were to be regarded as creditors, because the case before the court did not require an opinion as to others.

But article 4983, Paschal's Digest, would seem to be more extensive, viz: "No deed, conveyance, lien, or other instrument of writing shall take effect, as regards the interests and rights of third parties, until the same shall have been duly proved and presented to the court as required by this act for recording land titles."

The controversy is not between the vendee or supposed purchaser of the land and the vendor or his heirs or voluntary grantees, but between one who represents himself as a purchaser, in the State of Missouri, on the 12th October, 1859, and who resides in the city and State of New York, and who never exhibited the deed until the 5th day of October, 1867, at 9 o'clock a. m.   During all this time the maker of the deed, and ostensibly the owner of

the lands, consisting of upwards of fifty-four thousand acres, was transacting his ordinary business, and incurred debts to the amount of fifteen or twenty thousand dollars upon the faith of the ownership of this land.

It is difficult to conceive of a case more appropriate than this, showing the wisdom and justice of the legislature in passing the act.

I deem it my duty also not to pass over these purported deeds in silence. The first is dated 17th August, 1859, and recites a consideration of $20,000, and conveys all the property, real and personal, owned by the grantor in the State of Texas, without any definite description of its locality or quantity.

The second deed is dated 12th October, 1859, recites as a consideration $5,000, and conveys all the grantor's lands in the State of Texas, specifies the counties and town in which some of the lands lie, and gives the names of his grantor to two of the tracts, one of which contains from four to six thousand acres.

The two deeds, or purported deeds, are not essentially different, except in date and consideration. Upon the reading of these instruments the supposition would be that there were three tracts of land, but the petition sets forth at least twelve different tracts, besides numerous town lots. Neither of the instruments has been legally recorded, and it is evident that there was no consideration for them; that the seller did not know what he was selling or the purchaser what he was buying, and that legally nothing was sold or bought; that the most that can be said of the duplicate instruments is that they are *donatio mortis causa*, or a will, and must be treated as such.

My opinion is that there is no error in the judgment of the district court, but, as I am alone in this opinion, the judgment is reversed.