In re H.B. LEASING COMPANY d/b/a Ranchland d/b/a Wolfe/Witts Partnership d/b/a Avcor, II d/b/a B.C. Investments.

BANC ONE CAPITAL PARTNERS,
Appellant,

v.

ADDISON AIRPORT OF TEXAS, INC.,
City of Addison, Texas, Avcor, Inc.,
and H.B. Leasing Co., Appellees.

No. 4:93cv197.
Bankruptcy No. 91–40894–CHA–11.
Adv. No. A–92–4110A.

United States District Court,
E.D. Texas,
Sherman Division.

Nov. 17, 1995.

**812**

Reedy M. Spigner, Plano, TX, for appellant.

B. Keith Trent, Charles T. Frazier, Jr., Grady M. Gruber, Dallas, TX, for appellees.

## MEMORANDUM OPINION AND ORDER

PAUL N. BROWN, District Judge.

This is an appeal from the Bankruptcy Court's decision in an adversary proceeding that Appellant, Banc One Capital Partners, had no valid interest in two ground leases at Addison Airport in the city of Addison, Texas.

### Factual Background

The facts underlying this case are undisputed. As such, neither party has challenged the Bankruptcy Court's Findings of Fact.

On April 19, 1978, Addison Airport of Texas, Inc. ("AATI"), the City of Addison, Texas ("City"), and Avcor, Inc. ("Avcor") executed a ground lease covering non-residential real property at Addison Airport. On September 10, 1979, AATI, City, and Avcor executed a management ground lease.

On January 23, 1980, Banc One Capital Partners Corporation ("Banc") loaned $210,000 to Avcor pursuant to a promissory note.[1] Avcor delivered a deed of trust to Banc covering the leasehold estate created by the ground lease and the management ground lease. The deed of trust prohibited Avcor from assigning the premises without prior written consent from Banc. However, if the premises were transferred, Banc was permitted to require the successor to follow the terms of the deed of trust.

On January 30, 1980, Avcor assigned to H.B. Leasing Company ("H.B. Leasing") all of its right, title, and interest in and to the ground and management ground leases. In May, 1991, Ronald C. Wolfe, a partner in H.B. Leasing, filed an Involuntary Bankruptcy Petition under Chapter 7 against H.B. Leasing. On August 27, 1991, the case was converted to a Chapter 11 proceeding and Linda Payne was appointed Bankruptcy Trustee.

On August 13, 1991, an Agreed Order for Relief was entered in the H.B. Leasing bankruptcy proceeding. On November 14, 1991, Ronald C. Wolfe filed with the Bankruptcy Court an unsworn Declaration of Assets and Liabilities which listed the demised premises covered by the ground lease and management ground lease as assets of H.B. Leasing. On November 22, 1991, schedules were filed with the Bankruptcy Court listing the demised premises covered by the ground lease and management ground lease as assets of H.B. Leasing. Neither the Bankruptcy Trustee nor Banc accepted the leases within 60 days of any of the above dates.

### The Bankruptcy Court's Conclusions of Law

AATI filed a motion for summary judgment in the adversary proceeding in the Bankruptcy Court. The Bankruptcy Court granted AATI's motion and held that the assignments of the ground leases from Avcor to H.B. Leasing were an effective transfer. Therefore, since the leases were property of H.B. Leasing's estate, the failure of either the Bankruptcy Trustee or Banc to assume the leases within 60 days terminated Banc's rights in the leases. 11 U.S.C. § 365(d)(4).

The Bankruptcy Court further held that the failure of Avcor or H.B. Leasing to record the assignments did not render the assignments void as to Banc since the clear intent of the recording statute is to protect

---

1. Banc One Capital Partners Corporation was formerly known as M Venture Corp. and M Venture Corp. was formerly known as Mercantile Dallas Corporation.

lenders against prior unrecorded transfers or conveyances—not subsequent unrecorded transfers. Furthermore, the provision in the Deed of Trust requiring Avcor to obtain written consent prior to assigning the leases did not render the assignment void. Rather, Avcor's failure to obtain Banc's consent constituted, at most, a breach of a covenant in the Deed of Trust. Even if the deed of trust allowed Banc to void the lease assignments, such a provision would be unenforceable as an unreasonable and unlawful restraint on the alienation of real property.

The Bankruptcy Court concluded that as a result of the ground leases' termination, AATI has the exclusive right, title, interest, and possession of the property previously demised in the ground leases.

### Standard of Review

This appeal involves only conclusions of law of the Bankruptcy Court and these legal conclusions are reviewed *de novo*. *Heartland Fed. Savs. Loan Ass'n v. Briscoe Enters., Ltd., II (Matter of Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163 (5th Cir.), *cert. denied sub nom. Heartland Fed. Savs. and Loan Ass'n v. Brisco Enters., Ltd.,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

### Parties' Contentions on Appeal

Banc contends that the Bankruptcy Court erred as a matter of law in holding that the unrecorded assignments from Avcor to H.B. Leasing were effective as to Banc. Thus, Banc asserts that the leases were never a part of H.B. Leasing's bankruptcy estate. Accordingly, Banc's interest in the ground leases was never terminated.

Appellees respond that the Bankruptcy Court reached the correct decision since the purpose of the recording statute that Banc is attempting to utilize, TEX.PROP.CODE ANN. § 13.001 (Supp.1995), is to "protect parties that acquire an interest in property without notice of a *prior* unrecorded deed." Since the assignment from Avcor to H.B. Leasing occurred after Banc obtained its deed of trust, Banc can not avail itself of the protection of the recording statute. Furthermore, Appellees argue that Banc is not a "creditor" under the recording statute.

### Discussion

## I. The Texas Recording Statute Protects Existing Creditors

### A. Plain Wording of the Statute

■ An attempt to decipher the meaning of a statute must necessarily begin with the plain wording of the statute itself. Specifically, the statute states:

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

TEX.PROP.CODE ANN. § 13.001 (Supp.1995). Under the plain wording of the statute, it would appear the modifier "subsequent" modifies the word "purchaser," the noun it precedes, rather than modifying the word "creditor," a noun it follows. For example, if a statute prohibited the sale of "widgets and red gadgets", most people would assume that the sale of *all* widgets and only red gadgets was prohibited. However, as discussed below, the Court does not rest its holding on this ground alone.

### B. Texas Case Law

■ Banc claims that Texas courts have "consistently applied the [recording] statute to void unrecorded conveyances, whether prior or subsequent, as against creditors." However, as Appellees correctly note, the cases cited by Banc do not support this conclusion. *See Rhima v. White,* 829 S.W.2d 909 (Tex.App.—Fort Worth 1992, writ ref'd); *Ursic v. NBC Bank South Texas, N.A.,* 827 S.W.2d 334 (Tex.App.—Corpus Christi 1991, writ denied); and *In re Jones,* 77 B.R. 541 (Bankr.N.D.Tex.1987). Similarly, Appellees were unable to cite any authority which directly addressed this issue.

The Court is of the opinion that the correct statement of the law is contained within cases cited by neither party. In the early case of *Barrett v. Barrett,* 31 Tex. 344 (1868), *overruled on other grounds, Gunter v. Fox,*

51 Tex. 383 (1879), the plaintiff claimed he purchased property from the intestate in 1859. However, he did not record the deed until 1867. In between these two time periods, the intestate amassed a great deal of debt against the land. This Court considers the following holding, albeit dicta, to be instructive:

> This protection [of the recording statute] is extended to two classes of persons only, subsequent purchasers without notice and creditors. * * * But what class of creditors was intended to be protected by this legislation? Was it the creditors who became such subsequent to the delivery of the deed, as well as those who were so prior to and at the time of its delivery? * * * *The effects of the acts of registration is to create the inference of fraud, or raise the presumption of law that a conveyance is fraudulent, and therefore void as to existing creditors, if it be not duly registered.*

*Barrett*, 31 Tex. at 349 (emphasis added); *Reserve Petroleum Co. v. Hutcheson*, 254 S.W.2d 802 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.) (extending protection to a record lien creditor under the recording statute against a subsequently executed and recorded mineral deed holder).

### C. Banc is a Creditor under the Recording Statute

■ AATI also claims that Banc was not a creditor under the provisions of the statute, but merely a "holder of a deed of trust." AATI believes that Banc only became a creditor when Banc foreclosed upon the property. However, despite some early authority to the contrary, this Court finds that a party can become a creditor upon the existence of a valid lien; a party does not have to foreclose to obtain creditor status under the recording statute. *Reserve Petroleum Co. v. Hutcheson*, 254 S.W.2d 802, 804–05 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.) (record lien holder who did not foreclose was a creditor); *Stone v. Pitts*, 389 S.W.2d 601, 604 (Tex.Civ. App.—Waco 1965, no writ) (an assignee of a mechanic's lien who did not foreclose was a creditor).

### D. Effect of the Recording Statute in the Instant Case

■ Since Banc is a creditor protected by the recording statute, the assignment from Avcor to H.B. Leasing is void as to Banc. Thus, the leases, at least to the extent covered by Banc's security interest, were never within H.B. Leasing's bankruptcy estate. As such, the Trustee's failure to assume the leases within 60 days did not terminate Banc's interest in the leases.

### II. The Effect of the Non–Assignability Clause

■ Both Banc and the appellees have argued at both the Bankruptcy Court as well as on appeal that the "non-assignability" clause did not prevent the valid assignment from Avcor to H.B. Leasing Company. As AATI admits in its pleadings to the Bankruptcy Court

> The ... Deed of Trust simply does not provide that any transfer without the Bank's consent is ineffective to convey the interest to the transferee. On the contrary, the Deed of Trust explicitly recognizes that ownership of the Property may be vested in another person and further sets forth the Bank's right upon that event.

*Defendant Addison Airport of Texas, Inc.'s Motion for Final Summary Judgment and Brief in Support*, p. 8. Therefore, the Court agrees with the Bankruptcy Court that the "non-assignability" clause did not prevent a valid assignment from Avcor to H.B. Leasing Company. However, as discussed above, even though Avcor may have had the contractual power to assign the leases, this does not mean that assignments in violation of TEX.PROP.CODE ANN. § 13.001 are valid.

### III. 11 U.S.C. § 365(d)(4) Should not be Interpreted to Forfeit Banc's Property

■ Absent "exceptional circumstances," this Court will not review legal arguments not advanced to the Bankruptcy Court. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 747 (5th Cir.1989). However, this Court will *sua sponte* review a decision by a lower court

which occasions a constitutional violation on any party.

 In *Eastover Bank*, a decision published after the Bankruptcy Court's ruling in the instant case, the Fifth Circuit was faced with the following issue: "Does [a § 365(d)(4) ] rejection terminate the lease and thus extinguish a security interest taken in the debtor's interest in the lease ...?" *Eastover Bank for Savs. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1080 (5th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994). After a detailed analysis of the statute, the Fifth Circuit held:

> [A] debtor's inaction in timely deciding to assume or reject a lease of nonresidential real property under § 365(d)(4), which leads to a deemed rejection, does not effect a termination of that lease, or, consequently, an implied forfeiture of the rights of third parties to the lease.

*Id.* at 1083. Part of the Court's rationale for this holding was the potential unconstitutional forfeiture that would occur if the security interest were extinguished. *Id.* at 1081 (Contrary holdings "have worked needless and perhaps unconstitutional forfeitures of security interests."); *Id.* at 1083 ("Section 365(d)(4) 'forfeitures' of security interests have occurred automatically, by operation of law, without procedural protections."). In this case Banc had no notice of the assignment until the motion for summary judgment was filed. Therefore, in addition to its reasons stated above, this Court finds that § 365(d)(4) should not have been interpreted to terminate Banc's security interest even if the assignment from Avcor to H.B. Leasing was effective.[2]

### Conclusion

The Court finds that the unrecorded assignment from Avcor to H.B. Leasing was valid as to the general public. However, the assignment was not valid as to Banc, Avcor's creditor. Therefore, the judgment of the Bankruptcy Court is reversed and the case is remanded for further proceedings consistent with this Order.

IT IS SO ORDERED.

---

2. The Court does not reach the issue of deciding the extent of Banc's rights. As the Fifth Circuit noted in *Eastover Bank*, 19 F.3d at 1084,

> The extent of [the deed of trust holder's] rights, an issue not adjudicated below, should be de-

cided in state court, because after rejection the debtor's estate had no remaining interest in the outcome of that controversy, which is not "related to" the bankruptcy as is required for federal jurisdiction. 28 U.S.C. § 1334(b).