**In The Matter of ZAGATA FABRICATORS, INC.**

v.

**SUPERIOR AIR PRODUCTS,**
Creditor, Appellant.

No. 89–5618.

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 1990.

Decided Jan. 12, 1990.

---

Ravin, Greenberg & Zackin, P.A., Roseland, N.J., Allan M. Harris (argued), of counsel for appellant, Superior Air Products, Inc.

Kathryn Ferguson, Michael A. Zindler (argued), Markowitz and Zindler, Lawrenceville, N.J., for Zagata Fabricators, Inc.

Before GIBBONS, Chief Judge,
SCIRICA, Circuit Judge and
WALDMAN, District Judge *.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Superior Air Products ("Superior") appeals a decision of the Bankruptcy Court of New Jersey, affirmed by the District Court, excusing Zagata Fabricators, Inc. ("Zagata") from its obligation to pay rent to Superior under a lease agreement entered into on December 15, 1984. Zagata signed this lease in order to take possession of real estate owned by Superior which had been the object of a contract of sale between Zagata and Superior. Execution of the contract was prevented, however, by a state law requiring Superior to clean up industrial pollutants that had been discov-

---

* Hon. Jay C. Waldman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

ered on the land after the contract of sale had been signed. Two years after the signing of the lease, but before Superior was able to comply with state environmental standards, Zagata filed for bankruptcy. When Zagata's lease expired, a dispute ensued over the amount of rent it owed to Superior. Dissatisfied with the pace of Superior's efforts to clean up this land, the bankruptcy court on February 3, 1988 held that Zagata was free to withhold rent payments altogether. The district court affirmed, and this appeal followed. We will reverse.

## I.

The events leading up to the dispute in this case originated on October 12, 1984, when Superior agreed to sell to Zagata a 10.2 acre parcel of land, together with the industrial buildings situated on it, for 1.4 million dollars. Prior to closing, however, it was discovered that the property was contaminated with the industrial chemical toluene, which, under the New Jersey Environmental Cleanup Responsibility Act, N.J. Stat.Ann. tit. 13:1K–6 et seq. prevented title from passing to Zagata until Superior cleaned up the land in compliance with the Act. Because Zagata wished to take possession of the property immediately, the parties voluntarily entered into a lease agreement by which Zagata agreed to pay Superior a monthly rent of $6,600, in exchange for tenancy rights. This lease was made annually renewable on December 15, subject to mutually agreeable changes in the terms of the lease.

Zagata's fortunes took a turn for the worse over the next two years, and on September 22, 1986, it filed for bankruptcy. Following this development, Zagata and Superior began to spar over the renewal of the rental agreement. In particular, the parties clashed over the question of a rent increase; Superior sought to double the rent to $12,000 a month, while Zagata objected to any increase at all. The negotiations stalemated, and although Zagata continued to occupy the premises, no rent was paid between January and July of 1987 in the absence of a signed agreement.

In June of 1987, Zagata filed a motion under section 365 of the Bankruptcy Code to assume the contract of sale. 11 U.S.C. § 365. Superior responded with a cross-motion to compel Zagata either to vacate the premises in light of the parties' failure to renew the lease, or to pay "appropriate use and occupancy for the premises"—presumably at a rate higher than $6,600 per month. *See* Appendix at A–50. After issuing an order permitting Zagata to assume the executory contract, the bankruptcy court scheduled a hearing on the question of Zagata's obligations under the lease.

On January 7, 1988, the bankruptcy court denied Superior's cross-motion, and relieved Zagata of any duty to pay Superior for the use and occupancy of the property. The court reasoned that Superior had failed to act in good faith in fulfilling its obligation to meet the state's environmental clean-up standards, and that therefore any further rent due to Superior did not constitute a "necessary cost" within the meaning of section 503 of the Bankruptcy Code. The case was appealed to the district court, which in turn remanded the case on June 20, 1988, directing the bankruptcy court to issue a more detailed explanation of its disposition. This the bankruptcy court did on November 18, finding once again that Zagata owed no rent to Superior. The district court affirmed on June 20, 1988. This appeal followed.

## II.

The issue presented in this case is whether the bankruptcy court erred when it excused Zagata from paying any rent in exchange for the continued right to use and occupy Superior's real estate. This question arises in the statutory context of section 503 of the Bankruptcy Code, which provides for the payment of "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503. The bankruptcy court held that Superior was not entitled to any payment of rent on the grounds that such payment did not amount to an actual, necessary expense for purposes of section 503, and that it therefore had the discretion

to reject Superior's claim. This result is untenable.

### A. Lessors' Relief Under the Bankruptcy Code

■ The dispute in this case arose when Superior sought an order from the bankruptcy court requiring Zagata to pay rent pursuant to sections 503 and 507 of the Code. Working in tandem, these provisions are designed to sustain the viability of estates in bankruptcy by giving highest priority to the payment of "administrative expenses"—the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. §§ 507, 503(b). By placing creditors who are entitled to payment of these administrative expenses first in line, sections 503 and 507 advance the estate's interest in survival above all other financial goals. Hence, if a creditor can establish a claim to an administrative expense as defined by section 503, the bankruptcy court must give first priority to the payment of that creditor.

■ When the creditor involved is a landlord seeking rent for the use and occupancy of real estate, the Bankruptcy Code provides two basic avenues of relief. First, the landlord may seek payment as a first priority creditor. There is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an "actual, necessary" cost to which a landlord, as a creditor, is entitled. See Philadelphia Co. v. Dipple, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941); In re 48th Street Steakhouse, Inc., 61 B.R. 182 (Bankr.S.D.N.Y.1986). In order to survive, a financial entity almost always needs a physical space to occupy. When a debtor owns no suitable real estate of its own, its only choice is to become a tenant, and to assume the obligations of paying periodic rent to a landlord. In such circumstances, therefore, rent is clearly an "actual, necessary" cost of preserving the estate, since the debtor's survival depends on its ability to pay the landlord for the right to possess the space necessary to conduct its business. Because bankruptcy proceedings are considered to be equitable, however, the land-

lord's right to collect monetary relief is somewhat curtailed: a debtor is generally required to pay only a reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease. See In re Mohawk Indus. Inc., 54 B.R. 409 (Bankr. D. Mass.1985).

When a debtor is unable to meet the obligation to pay rent, a second form of relief is available to the landlord. As a general matter, landlords are barred by section 362(a)(3) of the Code from seeking to evict debtors in forums other than the bankruptcy court. Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate, or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Although ostensibly directed at actions to dispossess debtors of property they own, section 362(a)(3) also applies to creditors seeking to evict debtors from property they merely inhabit as tenants. See In re 48th Street Steakhouse, Inc., 61 B.R. 182 (Bankr.S.D.N.Y.1986).

This presumption against collateral proceedings is rebuttable, however, under section 362(d), which empowers the bankruptcy court to lift the stay "for cause, including the lack of adequate protection of an interest in property of [a] party in interest." 11 U.S.C. § 362(d). In the case of a tenant who neglects to pay rent, the upshot of § 362(d) is to permit the landlord to challenge the stay against state court remedies upon a showing of "extraordinary or compelling equitable circumstances." In re LJC Corp., 30 B.R. 292, 294 (Bankr. D.C.1983). In this way, the failure of a debtor to pay rent affords the landlord the opportunity to convince the bankruptcy court to lift the stay and permit the landlord to seek an ejectment order from state court. See id.

■ In a situation in which, as here, a debtor fails to pay rent but continues to occupy the landlord's premises, the landlord thus may pursue two remedies under the Bankruptcy Code. First, the landlord

may claim first priority as a creditor to whom the debtor owes rent as an "actual, necessary cost[ ] ... of preserving the estate." 11 U.S.C. §§ 503, 507. Second, if such payment cannot be made and the landlord can show cause, the bankruptcy court may permit the landlord to pursue state law remedies such as eviction. Because of the equitable nature of the proceeding, however, both remedies are to be administered flexibly: the bankruptcy court has the discretion to require the payment of rent that is "reasonable," and to decide whether equity dictates lifting the stay against collateral proceedings.

## B. *Application*

In the present case, the bankruptcy court granted Superior neither of these benefits, effectively permitting Zagata to remain in possession of Superior's land free of charge. According to the court, Superior's demand for rent did not amount to an "actual, necessary cost[ ] ... of preserving the estate." The court reasoned that, because Superior had acted in bad faith in cleaning up the land for purposes of executing the contract of sale, Superior had failed to approach the court with the "clean hands" necessary to justify any equitable relief.

■ There are several fatal weaknesses with this reasoning. The first of these is revealed by a closer examination of the relationship between the contract of sale and the lease agreement between Superior and Zagata. An important fact overlooked —indeed, ignored—by the bankruptcy court is that the lease agreement allowing Zagata to take possession of Superior's land was entirely voluntary. Neither Zagata nor Superior was obligated in any way to sign this lease. Rather, Superior and Zagata agreed to the lease out of mutual convenience, in order to permit Zagata to take possession of the land despite the fact that state law prevented the contract of sale from being executed. In this sense, Superior's liability with respect to its obligations under the contract of sale is separable from its claim to relief under the lease. Superior, after all, was free to decline the lease agreement altogether, and could have easily denied Zagata the opportunity to take possession of the land. The bankruptcy court's ruling thus has the counterintuitive effect of punishing Superior—rather severely, in fact—for its voluntary attempts to mitigate the hardship faced by Zagata. That Superior may have ultimately breached its duties under the contract of sale does not, therefore, justify a remedy that, in effect, forces Superior to surrender its rights as a landlord under its lease with Zagata.

■ A more serious problem with the bankruptcy court's ruling is that it provides a form of relief to Zagata that has no authority in contract law. To the extent that Superior's alleged bad faith in fulfilling its obligations under the contract of sale amounted to breach, Zagata's right to relief is dictated by principles of contract. When a seller in a real estate transaction breaches by failing to tender title to the buyer, the buyer may ordinarily obtain specific performance. *See Barry M Dechtman, Inc. v. Sidpaul Corp.*, 89 N.J. 547, 446 A.2d 518 (1982); *see also* A. Farnsworth, Contracts 829–30 (1982). In New Jersey, a buyer may also recover out-of-pocket expenses in such circumstances. *See* N.J. Stat.Ann. tit. 2A:29–1. In this case, moreover, Zagata might even be in a position to pursue reliance damages as well, since it is arguable that it took possession of Superior's land in reliance on Superior's promise to satisfy the state's environmental standards and thereby effect the execution of the contract of sale. *See* Restatement (Second) of Contracts § 349 (1979).

■ In any event, no authority of which this court is aware provides support for the extraordinary remedy granted here, namely, possession free of charge. When a seller of real estate breaches, the buyer simply is in no position to obtain possession of the land free of any duty to pay the seller in return for use and occupancy. Nor is the result any different when the buyer is a tenant in possession of the land. If a landlord agrees to sell property to a tenant in possession, and the landlord subsequently

breaches, the tenant may not obtain free possession as a remedy to the landlord's breach.

Finally, we are unpersuaded that the equities in this case support the result reached by the bankruptcy court. It may certainly be true that Superior's bad faith amounted to a breach of its contract to sell this real estate to Zagata. However, to whatever extent this behavior soiled Superior's hands, we are convinced that in this case at least, the equitable maxim requiring parties to come to the court with clean hands must be balanced against the paramount common sense principle that you can't get something for nothing. In our view, then, the inequities created by the remedy granted by the bankruptcy court far outweigh the inequities sought to be redressed.

### III.

For the foregoing reasons, we conclude that the bankruptcy court erred as a matter of law when it excused Zagata from its obligation to pay Superior a reasonable value for the use and occupancy of Superior's real estate. Although we assume, arguendo, that Superior has breached the contract of sale, the proper mode of relief available to Zagata does not include the right to retain possession of Superior's land free of any obligation to pay rent. At a minimum, Superior is therefore entitled to a reasonable value for the use and occupancy of its land as an administrative cost under section 503 of the Bankruptcy Code. We accordingly reverse the finding of the district court affirming the judgment of the bankruptcy court. We remand the case to the bankruptcy court for a determination of the amount Zagata must pay for the use and occupancy of Superior's real estate.