**In re SPORTSMAN'S WAREHOUSE, INC., et al., Debtors.**

No. 09–10990.

United States Bankruptcy Court, D. Delaware.

Aug. 3, 2009.

Gregg M. Galardi (Argued), Khristy M. Peguero, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, DE, Glenn S. Walter, Emily C. Ma, Skadden, Arps, Slate, Meagher & Flom, LLP, Los Angeles, CA, for Debtors and Debtors in Possession.

Michael G. Busenkell (Argued), Womble Carlyle Sandridge & Rice PLLC, Wilmington, DE, for Cole SP De Pere WI, LLC, Cole SP Wichita KS, LLC and Cole MT Pocatello ID, LLC.

### OPINION[1]

Re Docket No. 347

SONTCHI, Bankruptcy Judge.

### INTRODUCTION

Before the Court is a motion seeking allowance and payment of administrative claims for three types of rent. First, under sections 365(d)(3) and 503(b) of the Bankruptcy Code, the moving landlords seek the allowance and immediate payment of rent for the period from the petition date through the first of the following month, commonly referred to as "stub rent." Under the Third Circuit's opinion in *Montgomery Ward*, the landlord does not have an administrative claim for the stub rent under section 365(d)(3) as the obligation to pay that rent arose pre-petition.

Although an administrative claim for stub rent cannot be allowed under section 365(d)(3), the landlord may have an allowed administrative claim under section 503(b) for the debtors' use and occupancy of the premises during the stub rent period as an actual and necessary expense of preserving the estate. Applying the Third Circuit's holding in *Zagata Fabricators*, this Court recently held in *Goody's Family Clothing* that a debtor's post-petition use and occupancy of real property, *per se*, gives rises to an allowed administrative claim. While *Zagata Fabricators* provides that rent is an actual and necessary expense, it was inappropriate for this Court to apply a *per se* rule in *Goody's Family Clothing* that the use and occupancy of the premises confers a benefit to the estate. Rather, the Court must analyze the evidence submitted and determine, on a case by case basis, the amount of the benefit to the estate. In this case, there is a dispute as to whether the debtors' occupancy of the premises provided any benefit to the estate. The resolution of that dispute requires a further evidentiary hearing.

Second, under section 365(d)(3), the landlords seek as additional rent the allowance and immediate payment of real estate taxes relating to a pre-petition period for which the landlords assert the debtors became liable after the petition date but prior to the rejection of the leases. As the debtor's obligation to pay those taxes did not arise until after the rejection, under *Montgomery Ward*, the landlords do not have an administrative claim under section 365(d)(3) for real estate taxes relating to the pre-petition period.

---

1. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Third, under section 503(b), the landlords seek as additional rent the allowance and immediate payment of real estate taxes accruing from the petition date through the rejection of the leases. As with stub rent, the Court must determine, based upon evidence, the amount of any benefit to the estate. Determination of any benefit to the estate necessarily requires a finding of the cost of occupancy. As the landlord has not yet been billed for those taxes, there is not sufficient evidence to determine the amount of the expense. Thus, the landlords' administrative claim for real estate taxes accruing from the petition date through the rejection of the leases must be denied without prejudice.

As all the landlords' claims are either disallowed or require a further hearing, the Court need not address whether any allowed claims must be paid immediately.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

## STATEMENT OF FACTS [2]

On March 21, 2009 (the "Petition Date"), Sportsman's Warehouse, Inc. (the "Debtor") filed for bankruptcy under Chapter 11. The Debtor's business is the operation of large format retail sporting goods stores. As such, the Debtor is party to numerous leases.

Three affiliated landlords brought the motion before the Court. Cole SP De Pere WI, LLC ("Cole De Pere") is the Debtor's landlord for a store located in De Pere, Wisconsin. Cole SP Wichita KS, LLC ("Cole Wichita") is the Debtor's land-

lord for a store located in Wichita, Kansas. Cole MT Pocatello ID, LLC ("Cole Pocatello") is, not surprisingly, the Debtor's landlord for a store located in Pocatello, Idaho. The Debtor used and occupied all three premises after the Petition Date. The leases for the De Pere and Wichita stores were rejected as of April 30, 2009. The lease for the Pocatello store was rejected as of May 31, 2009.

The Landlords seek allowance and payment of claims for the following:

### a. Unpaid Stub Rent For The Petition Date Until March 31, 2009

The Debtor's rent is due on the first of each month. The Debtor did not pay Cole Pocatello for the rent due on March 1, 2009. Thus, Cole Pocatello seeks unpaid "stub rent" for the period from the Petition Date through March 31, 2009.

### b. Pre–Petition Real Estate Taxes

On March 31, 2009, the taxing authority with jurisdiction over the Wichita store issued a "Real Estate Tax Statement" to the Debtor for real estate taxes for the period of July 1, 2008 through December 31, 2008. The Debtor is responsible under the lease for payment of real estate taxes. As such, the Wichita lease provides that the Debtor "shall pay [the real estate taxes as additional rent], as and when due and before penalty accrues for nonpayment, all property taxes ..." The tax invoice provides that payment is due on May 13, 2009.

On April 23, 2009, Cole Pocatello sent an invoice to the Debtor for the payment of real estate taxes for the period of July 1, 2008 through December 31, 2008. Again, the Debtor is responsible under the lease for the payment of real estate taxes. The Pocatello lease provides that the Debtor's obligation to pay taxes as additional rent is "as and when due and before penalty accrues for non-payment ..." The tax in-

---

**2.** The Court conducted a hearing in this matter. The facts set forth herein are based upon the uncontested evidence submitted at that hearing.

voice does not specifically indicate a "due date," although it states that "to avoid charges, payments must be received or postmarked by due date." The invoice goes on to state that the taxes are "delinquent if not paid on before June 20, 2009."

#### c. Post–Petition Accrued Real Estate Taxes

All three landlords seek allowance of an administrative claim for real estate taxes that accrued between the Petition Date and rejection of the lease.[3] In the case of Cole De Pere and Cole Wichita this is April 30th. In the case of Cole Pocatello it is May 31st. None of the landlords have been billed for the real estate taxes that have accrued.

The Court conducted a hearing in this matter. The parties stipulated that they would go forward on the application of the law to certain undisputed facts. The Debtor made it clear that it was not agreeing to the allowance or the amount of any claim. The parties agreed that an additional evidentiary hearing would be required in the event that the Court required evidence to determine the allowance or the amount of any administrative claim.

### LEGAL DISCUSSION

#### A. Unpaid Stub Rent For The Petition Date Until March 31, 2009

##### a. Section 365(d)(3)

■ Section 365(d)(3) of the Bankruptcy Code requires the trustee to timely perform all the obligations of the debtor arising from and after the petition date. The Third Circuit held in *Montgomery Ward,* that an obligation is something that one is legally required to perform under the terms of the lease and that an obligation only arises when a party becomes legally obligated to perform it.[4] As the March rent under the Pocatello lease was due on March 1st, 13 days prior to the Petition Date, the Debtor's obligation to pay that rent arose pre-petition and the stub rent is not allowable as an administrative claim under section 365(d)(3).[5]

##### b. Section 503(b)

■ This Court recently held in *Goody's Family Clothing* that section 365(d)(3) is not the sole basis under which a landlord can be awarded an administrative claim for unpaid rent.[6] Rather, the Court held that an administrative claim for unpaid rent may be allowed under section 503(b) as an actual and necessary expense of preserving a debtor's estate.[7] In addition, while the landlord bears the burden of proof to establish its claim is for an actual and necessary expense, the Court held that "the mere fact that the Debtors are occupying the [l]andlord's premises is sufficient, *in and of itself, to establish that payment for that use and occupancy is an actual, necessary expense of preserving [a debtor's estate] under section 503(b)(1)."* [8]

---

3. As with Cole Wichita and Cole Pocatello, the Debtor is responsible for payment of real estate taxes under the Cole De Pere lease.

4. *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),* 268 F.3d 205, 209 (3d Cir.2001). *Contra In re Stone Barn Manhattan LLC,* 398 B.R. 359, 365–68 (rejecting holding in *Montgomery Ward* and applying proration approach for payment of post-petition rent).

5. *See, e.g., In re Goody's Family Clothing, Inc.,* 392 B.R. 604, 609 n. 9 (Bankr.D.Del.2008), *aff'd,* 401 B.R. 656 (D.Del.2009) (collecting cases).

6. *Id.* at 609.

7. *Id.*

The issue in *Goody's Family Clothing* was whether three landlords could recover, as administrative claims, the stub rent for the debtors' post-petition use and occupancy of the landlords' real property. The amount of the asserted claim and the debtors' use and occupancy of the premises was undisputed. The sole issues were whether the claim could be allowed as an administrative claim; and, if so, whether the landlords had satisfied their burden of proving that the stub rent was an actual and necessary expense of preserving the debtor's estate.[9]

The debtors argued that section 365(d)(3) could not be a basis for the payment of stub rent as the obligation to pay the applicable month's rent arose pre-petition. The Court quickly disposed of this matter in the debtors' favor by applying the holding in *Montgomery Ward*.[10]

The debtors further argued that section 365(d)(3) specifically renders section 503(b)(1) inapplicable to post-petition obligations under any unexpired lease of non-residential real property. In addition, the debtors argued that, under sections 365(b)(1)(A) and 365(g)(1), whether a claim for stub rent may be allowed and paid as an administrative claim depends entirely on whether the debtors assume or reject the applicable lease. The Court rejected the debtors' arguments.

Based upon the use of the word "notwithstanding" in section 365(d)(3), the Court held that section 365(d)(3) does not limit a landlord's remedies for payment of post-petition rent to section 365(d)(3).

Rather, it expands those rights by providing for the timely payment of rent obligations without the need for a landlord to file an administrative claim and seek immediate payment. Thus, section 365(d)(3) does not prevent the allowance of a claim under section 503(b).

This Court further held that the effect of a debtor's ultimate assumption or rejection of a lease on the priority of certain elements of a landlord's claim does not prevent the allowance of an administrative claim for stub rent under section 503(b)(1). Based upon cases where courts have allowed administrative claims for a debtor's use and occupancy or real property where the lease has expired or been rejected this Court held that an administrative claim could be allowed under section 503(b) where a landlord's premises are used and occupied post-petition under an unexpired lease that is ultimately rejected.

The final issue before this Court in *Goody's Family Clothing* was whether the landlord had satisfied its burden under section 503(b) to establish that the debtors' use and occupancy of the premises during the stub rent period was an actual and necessary cost of preserving the debtors' estates. As stated earlier, there was no dispute as to the debtors' use and occupancy or the amount of the claim. Applying the Third Circuit's holding in *Zagata Fabricators*, this Court held that "the mere fact that the Debtors are occupying the Landlords' premises is sufficient, in and of itself, to establish that payment for that use and occupancy is an actual, necessary expense of preserving the Debtors' estates

---

8. *Id.* at 614 (citing *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir.1990)) (emphasis added).

9. The Court also addressed the timing of payment of the claim. *Id.* at 614–18. As set

forth below, that issue is not ripe for decision at this time and, thus, is not discussed here.

10. *Id.* at 608–09.

under section 503(b)(1)." [11]

*Zagata Fabricators* was an appeal of a bankruptcy court's denial of a landlord's request for an administrative claim for the debtor's undisputed post-petition use and occupancy of the landlord's premises. The dispute between the landlord and the debtor had its genesis two years before the bankruptcy when the parties entered into a contract for the sale of 10 acres of commercial property by the landlord to the debtor. Prior to closing the sale, it was discovered that the land was contaminated, which precluded the transfer of the property under state law. As the debtor wanted to occupy the land immediately while the seller attempted to remediate the contamination the parties entered into a one-year lease for the property subject to the sale contract. The lease was renewable on December 15th of each year upon the parties' mutual agreement.

The debtor filed bankruptcy in September, 1986. After the filing, a dispute arose between the debtor and the landlord over the proper rent for the following year. The parties could not reach agreement and the lease expired on December 15th. The debtor continued to occupy the premises but did not pay any rent from January, 1987 through July, 1987. In June, 1987, the debtor filed a motion seeking to assume the sale contract entered two years earlier. The landlord responded by filing a cross motion for allowance and payment of an administrative claim under section 503(b) for the debtor's use and occupancy of the premises it was seeking to buy. [12] The bankruptcy court approved the assumption. [13] In addition, the bankruptcy court found that the landlord had engaged in bad faith in connection with the sale contract by not fulfilling its obligation to meet the state's environmental clean-up standard and, therefore, any further rent due to the landlord did not constitute a "necessary cost" of preserving the debtor's estate. The Third Circuit reversed, finding the bankruptcy court's ruling "untenable." [14]

The Third Circuit held that the landlord in *Zagata Fabricators* had two avenues of relief: (i) allowance and payment of an administrative claim under section 503(b); and (ii) relief from the automatic stay to dispossess the landlord. In discussing the allowance of a claim under section 503(b), the Court stated that:

> [t]here is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an "actual, necessary" cost to which a landlord, as a creditor, is entitled. In order to survive, a financial entity almost always needs a physical space to occupy. When a debtor owns no suitable real estate of its own, its only choice is to become a tenant, and to assume the obligations of paying periodic rent to a landlord. In such circumstances, therefore, rent is clearly an "actual, necessary" cost of preserving the estate, since the debtor's survival depends on its ability to pay the landlord for the right to possess the space necessary to conduct its business. Because bankruptcy proceedings are considered to be equitable, however, the landlord's right to collect monetary relief is somewhat curtailed: a debtor is generally required to pay only a reasonable value

---

11. *Id.* at 614.

12. Section 365(d)(3) was not applicable because the landlord was seeking rent for a period after the lease had expired.

13. Although not stated in the opinion, the sale presumably closed after the sale contract was assumed.

14. *Zagata Fabricators*, 893 F.2d at 626.

for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease.[15]

The Third Circuit then reversed the bankruptcy court's application of equitable principles in denying the landlord's request for an administrative claim.

 There is no ambiguity in the Third Circuit's holding that "rent is clearly an 'actual, necessary' cost of preserving the estate, since the debtor's survival depends on its ability to pay the landlord for the right to possess the space necessary to conduct its business."[16] Thus, this Court held in *Goody's Family Clothing* and holds here that a debtor's use and occupancy of leased premises post-petition is an actual and necessary expense of preserving the estate.

But, the Third Circuit immediately qualified its statement that rent is an actual and necessary expense by noting that "[b]ecause bankruptcy proceedings are considered to be equitable, however, the landlord's right to collect monetary relief is somewhat curtailed: a debtor is generally required to pay only a reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease."[17] Put another way, while the rent is an actual and necessary expense, use and occupancy of the premises may provide little or no benefit to the estate. At the very least, the contractual rent, which may include the payment of real estate taxes as additional rent, may be reduced to the market rate to reflect the actual value or benefit the debtor is receiving.

 This Court held as much in *Goody's Family Clothing*, stating that "the amount of the administrative claim for that use and occupancy is the fair market value, which is presumably the lease rate unless there is evidence to the contrary."[18] As there was no dispute as to the fair market value of occupancy, the Court granted the landlords an allowed claim under section 503(b) at the contract rate. The Court went on to state, however, that the use and occupancy of leased premises, *per se*, provides a benefit to the estate in the amount of the fair market value of occupancy. Upon further consideration, this last finding is a misapplication of the law and will no longer be followed by this Court.

 Rather, the Court must analyze the evidence submitted and determine, on a case by case basis, the amount of the benefit to the estate. The amount of the benefit to the estate is presumed to be the contract rate of rent.[19] Nonetheless, the debtor can submit evidence that the benefit to the estate is lower than the contract rate. That evidence may include, but is not limited to, proof of the fair market value of rent.[20] In this case, there is a dispute over the amount of the benefit to the estate. Resolution of that dispute requires a further hearing and, thus, the landlords' motion is not ripe for decision.

## B. Pre–Petition Real Estate Taxes

 Cole Wichita and Cole Pocatello seek the payment as an administrative

---

15. *Id.* at 627 (internal citations omitted).

16. *Id.*

17. *Id.*

18. *Goody's Family Clothing*, 392 B.R. at 614.

19. *See, e.g., In re Garden Ridge Corp.*, 321 B.R. at 676–77; *In re DVI, Inc.*, 308 B.R. at 708; and *In re ZB Co., Inc.*, 302 B.R. at 319.

20. *But see Zagata Fabricators*, 893 F.2d at 628 ("no authority of which this court is aware provides support for the extraordinary remedy granted here, namely, possession free of charge.").

claim under section 365(d)(3) of real estate taxes for the pre-petition period of July 1, 2008 through December, 31, 2008. Under well-settled law, whether the real estate taxes for the pre-petition period are payable as an administrative expense under section 363(d)(3) rises or falls on when the debtor's obligation to pay those taxes. The landlords argue that the obligation arose on the date the Debtor received the invoices, which was prior to rejection of the leases. The Debtor argues that it was only obligated to pay the taxes prior to the date any penalty would be assessed, which was after the rejection date. Resolution of this dispute requires an analysis of the applicable leases and tax invoices.

With respect to the Wichita property, the taxing authority sent its invoice on March 31st. The Wichita lease provides that the "Tenant shall pay, as and when due and before penalty accrues for nonpayment, all property taxes ..." The tax invoice provides that payment is due on May 13, 2009.

The plain meaning of the Wichita lease and tax invoice indicates that the real estate taxes may be paid upon receipt of the invoice but the Debtor was not legally obligated to pay those taxes until the due date, which was post-rejection. Cole Wichita relies on the use of the word "and" in the lease provision stating that payment is due "as and when due *and* before penalty accrues for nonpayment, all property taxes ..." in arguing that the Debtor's legal obligation to pay the taxes arose upon receipt of the invoice. The Court disagrees. In effect, the lease provides a window for payment by the landlord. It is not until that window is closed, i.e., when a penalty arises, that the landlord has a *legally enforceable* duty to pay the taxes.

Thus, the Court that the obligation to pay the Wichita real estate taxes did not arise until after the lease was rejected. Thus, SP Wichita is not entitled to an administrative claim. Rather, any claim for those taxes would be a general unsecured claim under section 365(g).

Similarly, Cole Pocatello sent the Debtor an invoice for the real estate taxes on April, 23rd, prior to the rejection date. The Pocatello lease states that the Debtor's obligation to pay taxes is "as and when due *and* before penalty accrues for nonpayment...." The tax invoice does not specifically indicate a "due date," although it states that "to avoid charges, payments must be received or postmarked by due date." The invoice goes on to state that the taxes are "delinquent if not paid on before June 20, 2009."

For the reasons set forth above, the Debtor was not legally obligated to pay the Pocatello real estate taxes until after the lease was rejected. Thus, SP Pocatello is not entitled to an administrative claim. At best, any claim for those taxes would be a general unsecured claim under section 365(g).

## C. Post–Petition Accrued Real Estate Taxes

█ Finally, all three landlords seek allowance of an administrative claim under section 503(b) for payment as additional rent of real estate taxes that accrued between the Petition Date and the rejection of the applicable lease.[21] None of the landlords have been billed for the real estate taxes that have accrued.

As discussed at length above,[22] the Debtor's use and occupancy of the premis-

---

**21.** In the case of Cole De Pere and Cole Wichita this is April 30th. In the case of Cole Pocatello it is May 31st.

**22.** *See* pp. 7–13, supra.

es gives rise to an actual and necessary expense of the estate. The question is whether that use and occupancy also benefitted the estate and, if so, in what amount. Until the landlords' claims are liquidated, however, the Court has no basis to make any finding as to benefit. As the landlords have not yet been billed for the taxes and have merely asserted an unsupported estimate, their request is not yet ripe for decision. Thus, the request for an administrative claim for real estate taxes that accrued after the Petition Date but before the rejection of the leases will be denied without prejudice.[23]

### CONCLUSION

For the reasons set forth above:

i. The request of Cole Pocatello for allowance and payment of an administrative claim under section 365(d)(3) for unpaid rent for the period from the Petition Date through March 31, 2009 is denied;

ii. The request of Cole Pocatello for allowance and payment of an administrative claim under section 503(b) for unpaid rent for the period from the Petition Date through March 31, 2009 is continued pending an evidentiary hearing on what benefit, if any, the Debtor received from the use and occupancy of Cole Pocatello's property;

iii. The request of Cole Wichita and Cole Pocatello for allowance and payment of an administrative claim under section 365(d)(3) for real estate taxes for the period from July 1, 2008 through December 31, 2008 is denied; and

iv. The request of Cole Wichita, Cole Pocatello and Cole De Pere for allowance and payment of an adminis-

trative claim under section 503(b) for real estate taxes that accrued for the period from the Petition Date through the rejection of the applicable lease is denied without prejudice.

An order will be issued.

---

23. As all the landlords' claims are either disallowed or require a further hearing, the Court need not address whether any allowed claims must be paid immediately.