### In re DVI, INC., et al., Debtors.

### No. 03–12656(MFW).

United States Bankruptcy Court, D. Delaware.

April 30, 2004.

---

Bradford J. Sandler, Raymond Howard Lemisch, Adelman, Lavine, Gold and Levin, PC, David W. Carickhoff, Jr., Pachulski, Stang, Ziehl, Young & Jones, Michael P. Morton, Michael P. Morton, P.A., Richard Michael Beck, Stephanie Ann Fox, Klehr, Harrison, Harvey, Branzburg & Ellis, Wilmington, DE, for Debtor.

Sheldon K. Rennie, Fox, Rothschild, O'Brien & Frankel LLP, Wilmington, DE, for Defendants.

## MEMORANDUM OPINION[1]

MARY F. WALRATH, Chief Judge.

This matter is before the Court on the Motion of the claimant, Rreef America Reit II, Corp., G ("Rreef"), for allowance and immediate payment of administrative expenses by DVI, Inc. ("DVI"). Rreef

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

seeks a declaration from this Court that it is owed an administrative expense for: (1) the rent due for the first partial month DVI was in bankruptcy and (2) DVI's use of the property after rejection. DVI opposes the Motion. For the reasons set forth below, we will grant Rreef's motion.

## I. FACTUAL BACKGROUND

Rreef and DVI were parties to a nonresidential real property lease dated March 8, 1999 (together with amendments, "the Lease"). In that Lease, Rreef agreed to lease the premises known as 4041 MacArthur Boulevard, Suite 401, Newport Beach, California ("the Premises") to DVI for five years. During the relevant time, the base rent was $36,272.25 per month. Additionally, the Lease provided that Rreef was entitled to escalation charges, interest and late charges on unpaid rent and to be compensated for all damages caused by DVI's breach of the Lease including attorneys' fees.

On August 25, 2003 ("the Petition Date"), DVI and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 10, 2003, DVI filed a Motion with this Court pursuant to section 365(a) of the Bankruptcy Code seeking authority to reject, *inter alia*, the Lease ("the Rejection Motion"). On October 3, 2003, we entered an Order approving the Rejection Motion, effective September 30, 2003.

Although DVI ceased operations at the Premises after the rejection date, it did leave behind its personal property. Additionally, for two months (until November 30, 2003), DVI maintained the keys and access to the Premises. During this time, DVI periodically entered the Premises to show prospective purchasers the personal property. That property was eventually sold to a buyer for $6,000, and all of the Debtor's property was removed from the Premises by November 30, 2003.

Rreef's Motion seeks as administrative expenses (1) $7,827.15 in rent for the partial month between the Petition Date and August 31, 2003 ("the Stub Rent"), pursuant to sections 365(d)(3) and 503(b) and (2) $83,969.02 [2] for rent for October and November 2003 pursuant to section 503(b).

DVI asserts that Rreef's claims for the Stub Rent and for its post-rejection use of the property are not administrative expenses pursuant to section 365(d)(3) or 503(b) of the Bankruptcy Code. In the alternative, DVI argues that, if the post-rejection use created an administrative expense, it should be limited to the value received by DVI from that use, which is the amount the Debtor received from the sale of the items stored on the Premises.

After the hearing held on January 7, 2004, we directed the parties to submit briefs addressing the valuation of the post-rejection use of the Premises. The parties have fully briefed the issues.

## II. JURISDICTION

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (M) & (O).

## III. DISCUSSION

The issues presented here are (1) whether the Stub Rent is entitled to administrative expense status, (2) whether DVI's use of the Premises post-rejection created an administrative expense, and if so, (3) how should that expense be valued.

---

**2.** This includes $36,272.25 in base rent, $3,713.00 in escalation charges and $1,99.26 in late charges for October and November 2003. In the Motion, Rreef also sought payment for rent during September 2003. However, DVI has since paid rent for that month.

### A. Stub Rent

#### 1. Section 365(d)(3)

█ Rreef asserts that the Stub Rent is entitled to administrative expense status based on section 365(d)(3) of the Bankruptcy Code. Rreef argues that section 365(d)(3) requires the immediate payment of a debtor's lease obligations so as to prevent landlords from becoming involuntary creditors of the estate. DVI argues, however, that section 365(d)(3) only requires that debtors pay obligations under the lease that arise post-petition and pre-rejection. The obligation here arose pre-petition; therefore, DVI argues that section 365 is not applicable.

█ We agree with DVI's position. Section 365 of the Bankruptcy Code requires the debtor to pay obligations which arise under a lease post-petition and pre-rejection. *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 206 (3d Cir.2001). The intent of the legislature in enacting section 365 was to require that the debtor perform according to the terms of the lease. *Id.* at 209. The word "obligations" is not defined in the Bankruptcy Code; however, the Third Circuit has defined it as "something that one is legally required to perform under the terms of the lease." *Id.* Moreover, the Third Circuit held that an obligation only arises when a party becomes legally obligated to perform it. *Id.* In this case to determine what obligation DVI had, one need only look to the Lease terms. Pursuant to Article 3 of the Lease, the rent was due in advance on the first of each month. Consequently, DVI was obligated to pay the August 2003 rent on August 1, 2003. Therefore, the August rent obligation arose pre-petition, and it is not an administrative expense pursuant to section 365(d)(3).

Rreef cites *Koenig* in support of its assertion that the Stub Rent is an adminis-

trative expense pursuant to section 365(d)(3). *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir.2000). However, *Koenig* involved a situation where the debtor rejected a lease in the middle of the month and sought to pay only a prorated portion of the rent to the rejection date. The Court rejected the debtor's argument and held that, under section 365(d)(3), the entire amount was due on the first day of the month. *Id.* at 989. This supports our holding as well. Here, the rent was also due on the first day of the month; however, the first day of the month was pre-petition, not post-petition. Therefore, the August rent cannot be classified as an administrative expense pursuant to section 365(d)(3).

#### 2. Section 503(b)

█ In the alternative, Rreef asserts that the Stub Rent is entitled to administrative expense status under section 503(b) of the Bankruptcy Code. Rreef argues that DVI's use of the Premises between the Petition Date and August 31, 2003, was a benefit to the bankruptcy estate. Rreef further asserts that the administrative expense for Stub Rent should be calculated based on the Lease terms, because the Lease rate is the fair market value.

DVI asserts that Rreef has not met its burden of proving that the Stub Rent is the fair market value for that period or that a benefit was conferred upon the estate.

█ Section 503(b) of the Bankruptcy Code states that administrative expenses shall be allowed for "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b). A landlord is entitled to an administrative claim in the amount of the fair market value of the premises when a debt-

or occupies and uses them post-petition. *Zagata Fabricators, Inc. v. Superior Air Products,* 893 F.2d 624, 627 (3d Cir.1990). *See also In re ZB Company, Inc.,* 302 B.R. 316, 319 (Bankr.D.Del.2003).

■ Generally, the fair market value is the price at which a willing buyer will pay a willing seller when neither party is compelled to buy or sell the property. *United States v. Cartwright,* 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973). There is a presumption that the lease rate is the fair market value unless there is evidence to the contrary. *ZB Company,* 302 B.R. at 319.

In the instant case, pursuant to the Lease, the base rent for the month was $36,272.25. Prorated, the amount of rent due for the period from August 26 through August 31 is $7,020.44. DVI has not offered sufficient evidence to rebut the presumption that this amount was the fair market value for the use of the Premises. DVI not only occupied the Premises, but it also continued its operations there during the month of August. Thus, the use of the Premises clearly provided a benefit to the estate. Accordingly, we find that the Stub Rent owed to Rreef in the amount of $7,020.44 is an administrative expense pursuant to section 503(b).

### B. *Post-rejection Use of Premises*

■ Rreef asserts that it is also entitled to an administrative expense claim for the use of the Premises post-rejection. It argues that the use benefited the estate. Rreef also asserts that the amount of the administrative expense claim is the rent due under the Lease.

■ If a lessee continues to use premises post-rejection, then a benefit has been conferred upon the estate which constitutes an administrative expense under section 503(b). *In re O'Brien Environmental Energy, In.,* 181 F.3d 527, 532–33 (3d Cir. 1999). DVI concedes that there was a benefit to the estate, at least to the extent that the Premises were used to store its personal property. However, DVI argues that such an administrative claim should be limited to $6,000 because that was the extent of the benefit to the estate.

As stated earlier, the amount of an administrative expense claim for rent is typically the fair market rental value of the Premises. *Zagata Fabricators,* 893 F.2d at 627. The contract rate is presumed to be the fair market value unless the presumption is rebutted. *ZB Company,* 302 B.R. at 319. Accordingly, DVI has the burden of showing why the contract rate was not the fair market value for the rental of the Premises. DVI has not offered any evidence to rebut the presumption. The $6,000 that DVI made by selling the personal property is irrelevant to the Lease rate's fair market value.

■ The Lease provided for $36,272.25 for base rent, $3,713.00 in escalation charges and $1,999.26 in late charges each month for October and November 2003. We will allow the base rent and escalation charges, but we will not allow the late charges. Unlike section 365(d)(3) which requires immediate payment, an administrative claim under section 503(b) need not be paid immediately but can be paid as late as the confirmation date. Accordingly, we find that Rreef is entitled to an administrative expense in the amount of $79,970.50 pursuant to section 503(b).

### IV. *CONCLUSION*

For the reasons set forth above, we conclude that Rreef is entitled to an administrative claim for the Stub Rent totaling $7,020.44 and for the post-rejection use of the Premises in the amount of

709

$79,970.50 pursuant to section 503(b). We will grant Rreef's Motion to that extent.

An appropriate order is attached.

## ORDER

AND NOW, this **30th** day of **APRIL, 2004,** upon consideration of the Motion Rreef America Reit II, Corp., G ("Rreef") for allowance of and immediate payment of administrative expenses and DVI's response, for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** Rreef's Motion for allowance of administrative expense is **GRANTED** in part; and it is further

**ORDERED** that Rreef is allowed an administrative claim for the Stub Rent totaling $7,020.44 and for the post-rejection use of the Premises in the amount of $79,970.50.