PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No.  09-2168

———————

In re: GOODY'S FAMILY CLOTHING INC., et al.,
                                                    Appellants

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-08-cv-00585/819/820)
District Judge: Honorable Renee M. Bumb

———————

Argued November 17, 2009

Before: AMBRO, ALDISERT, and ROTH, <u>Circuit Judges</u>

(Opinion filed  June 29, 2010 )


Ian S. Fredericks, Esquire
Gregg M. Galardi, Esquire (Argued)
Marion M. Quirk, Esquire
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square

P.O. Box 636
Wilmington, DE 19899-0000

       Counsel for Appellants

Duane D. Werb, Esquire
Werb & Sullivan
300 Delaware Ave., 13th Floor
P.O. Box 25046
Wilmington, DE   19899-0000

       Counsel for Appellee
       Mountaineer Property Co. II, LLC

Sherry Ruggiero Fallon, Esquire
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
Wilmington, DE 19899-0000

J. Carole Thompson Hord, Esquire (Argued)
Schreeder, Wheeler & Flint
1100 Peachtree Street, N.E.
Suite 800
Atlanta, GA   30309-0000

       Counsel for Appellee
       Stafford Bluffton, LLC

John D. Demmy, Esquire
Stevens & Lee
1105 North Market Street

Suite 700
Wilmington, DE 19801-0000

Nicholas W. Whittenburg, Esquire (Argued)
Miller & Martin
832 Georgia Avenue
Suite 1000, Volunteer Bldg.
Chattanooga, TN   37402-0000

Counsel for Appellee
Eastgate Mall, LLC

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Goody's Family Clothing, Inc. and certain of its direct and indirect subsidiaries (collectively "Goody's" or "Debtors") appeal the judgment of the District Court affirming the Bankruptcy Court's decision to award "stub rent" as an administrative expense under 11 U.S.C. § 503(b) to three of the Debtors' landlords—Mountaineer Property Co. II, LLC, Stafford Bluffon, LLC, and Eastgate Mall, LLC (collectively the "Landlords").  "Stub rent" here is the amount due a landlord for the period of occupancy and use between the petition date and

3

the first post-petition rent payment.[1]  In deciding this issue, we construe further the meaning of 11 U.S.C. § 365(d)(3), first addressed in *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205 (3d Cir. 2001).  We hold that § 365(d)(3) does not supplant § 503(b) and the Landlords are entitled to "stub rent" as an administrative expense.  We thus affirm the judgment of the District Court, and do so for essentially the reasons given by Judge Bumb in her excellent opinion.

I.      **Facts and Procedural Background**

The relevant facts are undisputed.  Goody's and the Landlords entered into leases for nonresidential real property in various shopping venues around the country.  Each provided that rent would be paid in advance on the first day of every month during the term of the lease.  Goody's was current on its rent obligations until June 1, 2008, when it did not pay rent due under the leases.

On June 9, 2008, the Debtors filed voluntary petitions for bankruptcy relief under the Bankruptcy Code.  They simultaneously filed a motion with the Bankruptcy Court asking for permission to engage in various activities related to the

---

[1] Though called "rent," it is not necessarily tied to the rent amounts in the underlying lease agreements.  Here, the parties have stipulated to the "stub rent" amounts.

closing of certain stores, including those leased from the Landlords, and the liquidation of the products in those stores. The store-closing sales were to be handled by an agent specifically hired to perform that task.

The Bankruptcy Court granted the motion, and a store-closing agent was hired soon thereafter. Goody's continued to occupy the properties owned by the Landlords, and the sales occurred on premises. The agent sold the merchandise in the designated stores, taking a portion for itself and turning over the balance of the proceeds to the estate. By Goody's own admission, the sale was "pretty successful" and brought in 105.4% of costs. Additionally, Goody's received from the agent an amount equal to *per diem* rent associated with use of the Landlords' property to conduct the closing sales, including the entire "stub rent" period.

Goody's, however, has not paid the Landlords for the post-petition occupancy of the stores from June 9 through June 30, 2008. In line with 11 U.S.C. § 365(d)(3), Goody's did pay, and the Landlords accepted, the rent due for the month of July on July 1, 2008. The "stub rent" for June remains in dispute.

The Landlords filed administrative expense claims under § 503(b)(1) for the "stub rent," characterizing it as unpaid, post-petition rent that was an actual, necessary cost and expense of preserving the estate. Goody's objected, arguing the "stub rent" was due under the Leases prior to the petition date, making it a

5

general, unsecured pre-petition claim entitled to no special priority. Goody's further argued that § 365 was the exclusive source of obligations and remedies under unexpired leases, making any reference to § 503(b)(1) contrary to statutory text and controlling precedent.

The Bankruptcy Court heard argument on the Landlords' motions and granted them all as administrative expenses, but refused to require immediate payment. 392 B.R. 604 (Bankr. D. Del. 2008). An appeal was taken to the District Court, which affirmed.[2] 401 B.R. 656 (D. Del. 2009). Debtors then appealed to our Court. The District Court had jurisdiction under 28 U.S.C. § 158(a)(1) over the appeal from the Bankruptcy Court, which had jurisdiction under 28 U.S.C. § 157(b). We have jurisdiction under 28 U.S.C. §§ 1291 and 158(d).

We exercise plenary review over the District Court's conclusions of law, including matters of statutory interpretation. *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir. 2005). Because the District Court sat as an appellate court to review the Bankruptcy Court, we review the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof. *Id.*

## II.    Analysis

---

[2] The issue of immediate payment was not appealed and it is not before us.

The threshold question is simple: does the existence of § 365(d)(3) preclude the attempted use of § 503(b)(1) for the "stub rent"?  If so, the inquiry ends there.  If not, we must then determine whether the "stub rent" may be considered an administrative expense under § 503(b)(1).  We answer "no" to the first question and "yes" to the second.

### A.     Section 365(d)(3) does not preempt § 503(b)(1)

Section 365(d)(3) of the Bankruptcy Code imposes a special duty with respect to unexpired leases of nonresidential real property:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.  The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.  This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section.  Acceptance of any such performance

7

does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3). In *Montgomery Ward*, we interpreted what Congress meant when it referred to "obligations of the debtor . . . arising . . . after the order for relief under any unexpired lease of nonresidential real property." 268 F.3d at 208. We determined that the "clear and express intent of § 365(d)(3) is to require the [debtor] to perform the lease in accordance with its terms." *Id.* at 209. We thus held that "an obligation arises under a lease for the purposes of § 365(d)(3) when the legally enforceable duty to perform arises under that lease." *Id.* at 211.

Goody's argues that this completes the inquiry—the rent was due on June 1, 2008, prior to the petition date, so it did not need to pay for the occupancy from June 9 to June 30 because § 365(d)(3) does not mandate it.[3] However, *Montgomery Ward*

---

[3] Goody's also argues that § 365 provides the exclusive avenue through which a debtor can be made to pay lease rent. We reject this argument for numerous reasons. First, we are not confronted with lease rent; we are confronted with "stub rent" under § 503(b)(1), which may or may not be tied to the actual lease rate. Second, other provisions in the Code address leases, dispelling any notion that § 365 is exclusive here. *See, e.g.*, 11 U.S.C. § 503(b)(7) (addressing leases that are assumed and then

8

considered only the debtor's obligations under § 365(d)(3) and not, as is asserted here, its obligations under § 503(b)(1). Goody's is not required under § 365(d)(3) to make good on the June 1, 2008, pre-petition obligation, but *Montgomery Ward* did not address post-petition obligations under § 503(b)(1) of a debtor arising from actual occupancy independent of the lease. We turn to this question.

Section 503(b)(1) is specifically mentioned in § 365(d)(3). The provision imposes the duties discussed in *Montgomery Ward* "notwithstanding section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 365(d)(3). The key word here is "notwithstanding." It means "in spite of" or "without prevention or obstruction from or by." *Webster's Third New Int'l Dictionary* 1545 (1971). In this context, § 365(d)(3) is best understood as an exception to the general procedures of § 503(b)(1) that ordinarily apply.

Post-petition obligations are ordinarily given payment

rejected). Third, because § 365(d)(3) does not address residential leases, Goody's interpretation would imply that a debtor could occupy residential real property prior to assumption or rejection, leaving no § 503(b)(1) remedy for a landlord. Finally, Goody's attempt to invoke *expressio unius est exclusio alterius* (to express one thing is to exclude the others) fails to support the exclusivity of § 365(d)(3)—here, Congress expressly preserved other rights under the Code in the text of § 365(d)(3).

priority as administrative expenses, though such claims must still go through standard procedures of notice and a hearing to demonstrate that the costs were actual, necessary expenses of preserving the estate. *See* 11 U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses, . . . including . . . the actual, necessary costs and expenses of preserving the estate."). Section 365(d)(3) operates to dispense with these requirements for post-petition obligations under an unexpired lease of nonresidential real property, meaning it functions "without prevention or obstruction from or by" § 503(b)(1). This is essentially our holding in *Montgomery Ward*.

Relieving a landlord under § 365(d)(3) of burdensome administrative procedures, however, does not foreclose that landlord's ability to use the more burdensome procedures to recover in situations outside the scope of § 365(d)(3). Put simply, § 365(d)(3) does not supplant or preempt § 503(b)(1). The last sentence of § 365(d)(3) makes this plain: "Acceptance of any such performance [under § 365(d)(3)] does not constitute waiver or relinquishment of the lessor's rights under such lease or under [the Bankruptcy Code]." 11 U.S.C. § 365(d)(3). By accepting the July 1, 2008, payment from Goody's, the Landlords did not give up any other rights under the Bankruptcy Code, including those accorded by § 503(b)(1). Indeed, it would put lessors in an awkward place if, while debtors were required to pay them on time pursuant to § 365(d)(3), accepting such a payment served also to deprive lessors of the balance of their

10

rights under the Code.

The text of § 365(d)(3) is consistent with the Conference Report explaining the provision, which we referenced in *Montgomery Ward*. *See* 268 F.3d at 210–11. We specifically referred to the statements of Senator Orrin Hatch, a conferee on the originating act:

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code. . . . A second and related problem is that during the time *the debtor has vacated space* but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. . . . In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor. The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time

11

required in the lease. This timely performance requirement will [e]nsure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

H.R. Conf. Rep. No. 98-882 (1984), 98th Cong., 2d Sess., *reprinted in* 1984 U.S.C.C.A.N. 576, 598–99 (emphasis added). The statement supports our conclusion that § 365(d)(3) does not cover the situation in our case. Goody's never vacated the space. On the contrary, it continued to occupy the Landlords' properties to conduct store-closing sales. The purpose of § 365(d)(3) is to protect landlords from the burdensome requirements of § 503(b)(1) in securing payment from non-occupying debtors; it would be perverse indeed to conclude that it then precluded the use of § 503(b)(1) to secure "stub rent" from a debtor actually occupying the premises.

When a debtor occupies post-petition non-residential space it leases, that § 365(d)(3) provides when the rent obligation arises does not erase when lessors may make § 503(b)(1) claims for the value conferred post-petition by that occupancy. We thus conclude that the Landlords may assert a § 503(b)(1) claim for "stub rent."

> **B.    Debtors' occupancy of the leased premises was an actual and necessary benefit to the estate**

12

As § 503(b)(1) is available to the lessors here, we turn to whether the "stub rent" is an administrative expense[4] under § 503(b)(1). We believe it is.

For a commercial lessor's claim to get administrative expense treatment under § 503(b)(1), the debtor's occupancy of the leased premises must confer an actual and necessary benefit to the debtor in the operation of its business. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (*citing Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)). Proving this is the lessor's burden. *Id.* at 533. Thus, the Landlords "must . . . carry the heavy burden of demonstrating that the ['stub rent'] for which [they] seek[] payment provided an actual benefit to the estate and that [incurring 'stub rent' was] necessary to preserve the value of the estate assets." *Id.* (citation omitted).

We look to the *Mammoth Mart* test we adopted in *O'Brien*, and note that "[w]hen third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of [administrative claims] plainly require that their claims be

_____

[4] Administrative expenses, including the "actual, necessary costs and expenses of preserving the estate," may be allowed after notice and a hearing. 11 U.S.C. § 503(b)(1). There is no dispute that notice and a hearing occurred here.

13

afforded priority." *In re Mammoth Mart*, 536 F.2d at 954. In contrast, when the contract has been fully performed prior to the petition date, it is no longer executory and thus not entitled to payment priority as an administrative expense. In our case, Goody's has continued to occupy the premises post-petition, and it is attempting to do so without providing any post-petition consideration to the Landlords who were still providing services for the premises in the time prior to rejection.

This is similar, though not directly analogous, to the situation in *Zagata*, where we held that "[a]t a minimum, [a creditor] is . . . entitled to a reasonable value for the use and occupancy of its land as an administrative cost under section 503 of the Bankruptcy Code." *Zagata Fabricators v. Superior Air Prods.*, 893 F.2d 624, 627–28 (3d Cir. 1990). Although it addressed an expired lease, *Zagata* supports that the Debtors' retaining possession of the premises, thereby inducing post-petition services from the Landlords, is sufficient under the *O'Brien* and *Mammoth Mart* inquiries to be a transaction justifying administrative priority. This accords with the application of *Zagata* in the Bankruptcy Courts of our Circuit. *See In re DVI, Inc.*, 308 B.R. 703, 707–08 (Bankr. D. Del. 2004) ("A landlord is entitled to an administrative claim in the amount of the fair market value of the premises when a debtor *occupies and uses* them post-petition." (emphasis added)); *In re ZB Co.*, 302 B.R. 316, 319 (Bankr. D. Del. 2003) ("It is beyond dispute that all of the Debtors' landlords whose properties are *occupied and used* post-petition have valid administrative claims."

14

(emphasis added)); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) ("A lessor is generally entitled to an administrative claim under section 503(b) for the fair rental value of the lessor's property *actually used* by the debtor." (emphasis added)); *cf. In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) (unexpired lease of equipment sought to be abandoned with no continuing use thereof denied administrative priority); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51–52 (Bankr. D. Del. 2001) (denying administrative priority because indemnification, though under a pre-petition contract, is not an ongoing actual use of services); *In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999) (same).

Although mere occupancy is not always an actual and necessary expense that benefits an estate, there can be no reasonable dispute that the occupation of the leased premises here conferred a benefit. Goody's obtained a better than 105% recovery from the store-closing sales, and these sales were an integral part of the bankruptcy proceedings. The sales required a physical venue, and remaining in existing premises was just as necessary and beneficial to the estate as leasing new premises specifically for store-closing sales. Indeed, Goody's own conduct indicates that it saw the occupation of the Landlords' premises as a necessary expense when it charged (and collected from) its liquidation agent "actual [o]ccupancy [e]xpenses" equal to *per diem* rent pursuant to the store closing agreement approved by the Bankruptcy Court. *See* App. 937, 977–78. It

15

would be illogical to allow Goody's to collect the equivalent of "stub rent" from its liquidation agent, but not to require payment to the Landlords of "stub rent" as "necessary expenses." Thus, the Landlords are entitled to a reasonable "stub rent" as an actual and necessary expense for the benefit of the estate.

*   *   *   *   *

The Landlords are entitled to receive payment under Bankruptcy Code § 503(b)(1) for use of their nonresidential real property during the stub period of June 9–June 30, 2008. Section 365(d) does not preempt § 503 in this regard. The judgment of the District Court is affirmed.