**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1906
_____

In re: THE MALL AT THE GALAXY, INC.
_____

STEVEN P. KARTZMAN, as Chapter 7 Trustee,

v.

LATOC, INC.,
Appellant
_____

On Appeal from the United States District Court for the
District of New Jersey
(No. 2:22-cv-02859)
District Judge: Hon. John M. Vazquez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on April 11, 2024

Before: CHAGARES, *Chief Judge*, PORTER and SCIRICA, *Circuit Judges*.

Opinion filed: August 7, 2024
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

PORTER, *Circuit Judge*.

This case arises from the bankruptcy of the Mall at the Galaxy, Inc. ("the Mall"), a mall in Guttenberg, New Jersey. From 2007 to 2009, the Mall, though insolvent, incurred additional liabilities from being used as a conduit for a $2 million loan from a real estate company (Latoc) to a group of rubber recycling companies (the "PermaLife" entities). The loan funds were transferred to the Mall, which forwarded them to PermaLife. The Mall subsequently repaid Latoc $592,875.03 before entering bankruptcy. The Trustee filed a complaint seeking to avoid this payment as a fraudulent or preferential transfer detrimental to the Mall's creditors under 11 U.S.C. §§ 548(a)(1)(B) and 544(b)(1). The Bankruptcy Court and the District Court both held that the Mall did not receive reasonably equivalent value in exchange for the $2 million loan from Latoc, and that the transactions between Latoc, the Mall, and PermaLife should be collapsed and construed as a single, integrated transaction. We will affirm.

I.

This case involves essentially three entities (Latoc, the Mall, and PermaLife) linked across the relationship between Martin Sergi, and his friends Dibo and Raffaele Attar. Since 1986, Sergi had been the President and treasurer of the Mall, and since 1997 had owned 90% of its equity. Sergi and the Attars together held major equity stakes in the PermaLife rubber recycling entities. At the time of the events in question, Raffaele served as the President of Latoc and as a director of one of the PermaLife entities.

In 2007, a fire damaged the PermaLife business operation, and it deteriorated financially. PermaLife received a secured loan from Gemini Investors IV, L.P.

2

("Gemini"), which included a condition forbidding PermaLife from receiving a loan from an Attar-affiliated entity. Thus, a loan from Latoc to Permalife was barred by the conditions of the Gemini loan to PermaLife and because the PermaLife board would not give approval.

In September 2007, Sergi and Dibo agreed to a $2 million loan agreement, ostensibly between Latoc and the Mall. The parties memorialized the loan in a promissory note requiring the Mall to repay the loan with interest. The Mall was insolvent during the entire relevant period, i.e., 2007–09. The funds from Latoc were deposited into the Mall's bank account, and then transferred from the Mall into the PermaLife entities.

Sergi stated that the loan was designed to "manage the conflict that precluded a direct loan [from Latoc] to Permalife." App. 18. He also maintained that in exchange for the $2 million transferred to PermaLife, the Mall received equity in two PermaLife subsidiaries—a 100% interest in Piedmont Rubber Recycling, LLC ("Piedmont") and a 20% interest in PermaLife Internet, LLC ("PLI"). However, both subsidiaries were in dire straits financially and "soon headed into bankruptcy proceedings." App. 62–63. There is no written agreement corroborating the Mall's receipt of these equity interests. None of the profits accrued by Piedmont and PLI were paid to the Mall.

The Mall also owed interest to Latoc for the $2 million loan. Accordingly, between February 2008 and September 2009, the Mall transferred $592,875.03 to Latoc. On January 28, 2010, the Mall filed for Chapter 11 bankruptcy, which then converted into Chapter 7 proceedings. Steven Kartzman, the Chapter 7 Trustee ("Trustee") for the

3

Mall, commenced an action to recover the $592,875.03 repayment from the Mall to Latoc, alleging that the loan and repayments to Latoc were fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(B) and 544(b)(1), and N.J. Stat. Ann. §§ 25:2-25a(2) and 25:2-27a.

After a few years of discovery between the parties, the Trustee moved for partial summary judgment on the issue of reasonably equivalent value. The Bankruptcy Court granted the motion, finding that the Mall received less than reasonably equivalent value from PermaLife in exchange for forwarding the $2 million from Latoc. The Bankruptcy Court then conducted trial proceedings in August 2017 and February 2018, and issued a decision on April 4, 2019. App. 39–40. The Court voided the Mall's pre-bankruptcy transfers, holding that these were constructively fraudulent because the Mall was already insolvent at the time of the transfers, and because of the lack of equivalent value exchanged. App. 7.

On April 9, 2020, the District Court reversed the Bankruptcy Court's decision on the issue of reasonably equivalent value, finding that it "improperly focused on whether the [Mall] received reasonably equivalent value [from] when it transferred the Loan Proceeds to the PermaLife Entities, rather than whether the [Mall] received reasonably equivalent value from the $2 million [l]oan . . . [from] Latoc." App. 7–8. The District Court remanded to the Bankruptcy Court to address the "critical question" of "whether the $2 million was actually a loan to the [Mall] or whether the [Mall] was merely a conduit, or pass-through, to get the $2 million to the PermaLife Entities." App. 8. "[I]f the [Mall] was a mere conduit, then it did not receive *any* value, and the Pre-Petition Transfers would also not reflect reasonably equivalent value." *Id.*

4

On remand, the Bankruptcy Court again entered judgment for the Trustee. Latoc appealed to the District Court. The District Court agreed with the Bankruptcy Court that the Mall did not receive reasonably equivalent value. The District Court likewise agreed that the loan and subsequent transfers should be collapsed and construed as a single, integrated transaction. Finally, the District Court also agreed with the Bankruptcy Court's grant of prejudgment interest to the Trustee. Latoc appealed.

II

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 158(d)(1).

"When the District Court sits as an appellate court for the Bankruptcy Court, 'our review duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determination.' " *In re Energy Future Holdings Corp.*, 990 F.3d 728, 736 (3d Cir. 2021) (quoting *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)). "We review the Bankruptcy Court's 'legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof.'" *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013) (quoting *In re Goody's Fam. Clothing, Inc.*, 610 F.3d 812, 816 (3d Cir. 2010)). A bankruptcy court's award of prejudgment interest is reviewed for abuse of discretion. *See In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 573–74 (3d Cir. 2007).

III

Our review spans three issues. First, we agree that the Bankruptcy Court did not err in finding that the Mall did not receive any value from the loan between the Mall and

Latoc. We therefore agree that the loan and pre-petition transfers from the Mall to Latoc are constructively fraudulent and therefore avoided. Second, we agree that the Bankruptcy Court did not err in finding that the transfers between Latoc, the Mall, and PermaLife constituted a single, integrated transaction. Third, we agree that the Bankruptcy Court did not abuse its discretion in awarding pre-judgment interest to the Trustee.

A

Pre-bankruptcy petition transfers may be avoided if they reflect actual or constructive fraud. 11 U.S.C. § 548(a)(1). Sounding in constructive fraud, a Trustee may avoid a transfer when a party insolvent on the date of a transfer does not receive reasonably equivalent value for that transfer. *Id.* § 548(a)(1)(B).

We apply a two-step test to determine whether a transferor received reasonably equivalent value. *In re R.M.L.*, 92 F.3d 139, 148–49 (3d Cir. 1996). The first step entails "an express factual determination as to whether the debtor received any value at all." *Id.* at 149. This value need not be direct, tangible, or easily quantifiable. *Id.*

Second, if it is established that at least some value was received, we apply a totality-of-the-circumstances test to determine whether that value was reasonably equivalent to the amount transferred. *Id.* at 153. This inquiry may consider the fair market value received by the debtor, the arm's-length nature of the transaction, and the transferee's good faith. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 213 (3d Cir. 2006) (citing *In re R.M.L.*, 92 F.3d at 148–49, 153). More broadly, "reasonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives

6

up if it gets 'roughly the value it gave.'" *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (quoting *In re Fruehauf Trailer Corp.*, 444 F.3d at 213).

In a fraudulent conveyance action, the burden falls on the movant to prove by a preponderance of the evidence that the transfer resulted in no value for the debtor, or that the value received was not "reasonably equivalent" to the value of the relinquished interest. *In re Fruehauf*, 444 F.3d at 210–11. The inquiry is conducted from the standpoint of the creditors based on the circumstances existing at the time of the transfers. *In re R.M.L.*, 92 F.3d at 150. The court must look to the substance of the transaction, rather than its form, to determine whether a fraudulent transfer occurred. *Id.* Also, because determinations about reasonably equivalent value are "more often than not . . . bound up in the bankruptcy court's factual determinations," we have explained that they are "largely immune from attack on appeal . . . as it should be; the bankruptcy court, with its unique expertise, is in far better position than either the district courts, sitting as appellate tribunals, or the courts of appeals to make such determinations*." Id.* at 154.

Here, the Trustee met the burden of proving that the loan between Latoc and the Mall conferred less than reasonably equivalent value on the Mall. The Mall and its creditors assumed the repayment obligations for the $2 million loan. The Mall's only possible benefit from the $2 million was the alleged receipt of the interests in PLI and Piedmont. But those companies were insolvent, and, as rubber recycling companies, had no connection to the Mall's business. And in any case, the Bankruptcy Court found that Latoc failed to prove that the Mall received interests in PLI and Piedmont in the first place. There was no documentation of any such transaction, and all revenue received by

7

PLI was paid to PermaLife, and not the Mall. Latoc fails to cite evidence or present arguments sufficient to challenge the Bankruptcy Court's factual findings.

We affirm the Bankruptcy Court's holding that, because the Mall received less than reasonably equivalent value from the $2 million loan, the loan and pre-petition transfers from the Mall to Latoc are constructively fraudulent and therefore avoided under § 548(a).

B

"In analyzing a fraudulent transfer claim where there are multiple transactions, courts may collapse the steps, exchanges, and transactions that are 'part of one integrated transaction' to examine the substance, rather than the form, of the transactions." *In re DSI Renal Holdings, LLC*, 617 B.R. 496, 504 (Bankr. D. Del. 2020) (quoting *United States v. Tabor Ct. Realty Corp.*, 803 F.2d 1288, 1302 (3d Cir. 1986)); *see also Voest-Alpine Trading USA Corp. v. Vantage Steele Corp.*, 919 F.2d 206, 211–12 (3d Cir. 1990). Relying on *Tabor* and *Voest*, bankruptcy courts within our circuit apply the collapsed-transaction doctrine to avoidance actions. *See, e.g.*, *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 497 (Bankr. D. Del. 2010) (quoting *Tabor*, 803 F.2d at 1302).

Latoc accepts the applicability of collapsed-transaction doctrine rule from *Tabor* but argues that the evidence presented at trial cuts against application of the doctrine. Specifically, Latoc argues that the evidence established independence between the parties during the transactions, because:

1) Latoc actually gave the Mall two million dollars;

8

2) It did not control where the money was [sent] and how it was used;
3) The Mall exercised dominion and control over the money;
4) It was not obligated to forward the money to the Permalife entities;
5) There was proof of investment that was reasonable and legitimate;
6) The Mall was not a conduit to get the money to the Permalife entities;
7) The Mall had a right to make an investment and that fact that it failed is of no moment;
8) There was no reason or basis to collapse the transaction.

Latoc's assertions do not render the Bankruptcy Court's factual findings clearly erroneous. The Bankruptcy Court found that the evidence overwhelmingly indicated that the Loan was a "plan to fund the PermaLife Entities indirectly through the [Mall] after the direct loan from Latoc to [PermaLife] was rejected." App. 70. Sergi and the Attars shared interests in PermaLife and negotiated the Loan amongst themselves. The Loan from Latoc had been obtained "to manage the conflict" preventing PermaLife from borrowing directly from Latoc. App. 72 (internal quotation marks omitted). Sergi himself emphasized that the transactions were conceived to address the difficulty which he and the Attars faced trying to "put[] things into PermaLife." App. 73.

Based on that evidence, the Bankruptcy Court correctly found that the Loan and related transactions constitute one integrated transaction designed to circumvent the restrictions preventing a loan from Latoc to PermaLife. We therefore affirm the Bankruptcy Court's collapse of the transfers into a single, integrated transaction.

C

Latoc challenges the Bankruptcy Court's award of prejudgment interest on the Mall's $592,875.03 loan repayment, dating from the filing of the Trustee's Complaint on July 30, 2012. Latoc argues against such an award because in issuing the $2 million loan

9

and receiving repayment of $592,875.03, it purportedly lost over $1.4 million. But as the Bankruptcy Court pointed out, Latoc was able to use the $592,875.03 for over a decade.

11 U.S.C. § 550 governs prejudgment interest, and it provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, *the trustee may recover, for the benefit of the estate, the property transferred*, or, if the court so orders, *the value of such property*, from—
    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.

*Id.* § 550(a) (emphasis added). While there is no reference to prejudgment interest in the Bankruptcy Code, we construe the word "value" in § 550(a) as authorizing an interest award. *In re Hechinger*, 489 F.3d at 579.

"[T]he award of prejudgment interest in a preference action is within the discretion of the bankruptcy court." *Id.* (alteration in original) (quoting *In re USN Commc'ns, Inc.*, 280 B.R. 573, 602 (Bankr. D. Del. 2002) (collecting cases)). However, "[d]iscretion must be exercised according to law, which means that prejudgment interest should be awarded unless there is a sound reason not to do so." *Id.* (alteration in original) (quoting *In re Milwaukee Cheese Wis., Inc.,* 112 F.3d 845, 849 (7th Cir. 1997)).

"[M]ost courts find that awarding prejudgment interest in an avoidance action furthers the congressional policies of the Bankruptcy Code by compensating the estate for the time it was without use of the transferred funds." *In re USN Comm's,* 280 B.R. at 602 (collecting cases). "The award of prejudgment interest therefore serves to compensate the debtor's estate for . . . use of those funds that were wrongfully withheld from the debtor's

estate during the pendency of the current suit." *Id.* (quoting *In re Cybermech, Inc.*, 13 F.3d 818, 822–23 (4th Cir. 1994)).

The Bankruptcy Court reasonably awarded prejudgment interest to the Mall's estate. Courts have noted that "gratuitous delay" by the party seeking recovery may be grounds for limiting an award of interest. *See, e.g.*, *id.* at 603. However, the litigation in this case was not unnecessarily prolonged by the Trustee. The proceedings persisted over a long period because of summary judgment motions and discovery disputes, some of which resulted in discovery sanctions against Latoc. Accordingly, the Bankruptcy Court did not abuse its discretion in awarding prejudgment interest.

\* \* \*

We will affirm the District Court's order affirming judgment in favor of the Trustee and against Latoc, including the award of pre- and post-judgment interest.

11